395 S.E.2d 478

**STATE of West Virginia**

v.

**Donald W. LUTZ.**

No. 18198.

Supreme Court of Appeals of
West Virginia.

July 18, 1988.

Hugh Rogers, Jr., Kerens, for appellant.

Jill Miles, Asst. Atty. Gen., Charleston, for State of W.Va.

NEELY, Justice:

This is an appeal from the conviction of Donald Lutz for the first-degree murder (with a recommendation of mercy) of his friend and employer, Loren Chenoweth. Mr. Chenoweth, who was a builder and a minister, had hired defendant as a carpenter's assistant, and later baptized the defendant when he chose to be "born again." The victim and defendant were very close and apparently "loved each other as father and son," although there was testimony of tension between them because the defendant felt he did not live up to the victim's expectations.

Approximately two years before the killing, the defendant spoke to his girl friend and another minister telling them that he had heard voices telling him to shoot the victim because the victim "had the devil inside of him." The minister suggested to the defendant that his "message" was from Satan rather than God and the defendant returned to more apparently normal behavior. However, the defendant later became agitated over his "message" and shot Mr. Chenoweth on 17 March 1986.

The defendant's only defense was insanity. A psychologist and psychiatrist who had seen him at Weston Hospital testified for the state. Two psychiatrists testified for the defense, as well as a psychologist who had been called to the jail because of defendant's bizarre behavior [1] after the shooting. At defendant's request, the judge gave an instruction on the conse-

---

1. "He had been barking like a dog. He had been howling I guess through the evening, and he was saying repeatedly to the jailers and to other inmates that he was demon possessed and he needed to get the demons out of him."

quences of a verdict of not guilty by reason of insanity.

After brief deliberation, the jury sent the following request for information to the judge: "If the jury finds the defendant guilty with mercy, will he receive medical or mental evaluations and/or treatment?" The judge heard arguments of counsel on his response to this request. The judge decided that the answer to the question depended on factors beyond the court's control and would involve second-guessing numerous agencies. Therefore, the question could not accurately be answered one way or the other. The judge then wrote to the jury that he could not respond to the question.

Twenty minutes later, the jury sent the judge a request for a written copy of the jury charge. The judge solicited comments by counsel, and the prosecutor objected to sending a written copy of the charge to the jury. Defendant's counsel felt the judge should either grant the jury's request or re-read the charge to the jury. *W. Va. Rules of Cr.P.* 30, before its 1 February 1985 amendment, provided that the court could not give the jury a copy of its charge absent the consent of all parties. Under the mistaken belief that this provision of Rule 30 was still in effect, the trial judge refused the jury's request for his written charge because of the prosecutor's objection.

Defense counsel thereafter, and in a subsequent motion for a new trial, pointed out to the judge the 1985 amendment to Rule 30 that allows the judge to send the jury a written copy of the charge regardless of counsel's objection. The judge pointed out that according to the Rule, as amended, it was in his sound discretion to grant or deny the jury's request, and denied defendant's motion for a new trial. Defendant assigns as error the court's refusal to re-instruct the jury, either orally or in writing, upon the jury's request for a written copy of the charge. Because we find that upon the jury's request, which demonstrated their confusion concerning the law, the judge should have at least re-instructed them orally, we agree and reverse defendant's conviction.

▮▮▮ At the outset, we point out that this case concerns more than the question of granting a jury's request for the written charge under *W. Va. Rules of Cr.P.* 30. Under Rule 30, as amended, it was in the discretion of the judge to send the jury a written copy of the charge. Although it may have been preferable for the judge to grant the jury's request, we cannot say his refusal to do so was reversible error. However, it was reversible error for the judge to deny defendant's motion orally to re-instruct the jury in light of the jury's evident confusion over the law.

The jury was clearly concerned about the dangerousness of the defendant and the possibility, repeatedly argued by the prosecution, that the defendant might soon end up "on the streets" should they find him not guilty by reason of insanity. Yet the jury also clearly believed that the defendant was suffering to some degree from mental illness because they first asked the judge whether he would get medical treatment should they convict him. Although it is possible that when the jury requested a copy of the written charge they hoped it would answer their first question,[2] it is more likely that they wanted to review the court's long and detailed instruction[3] on

2. In fact, the written charge would not have answered their first question.

3. The Court's instruction read:

"Under our statutes relating to the commitment of criminals, the Court may order that a person who has been found not guilty by reason of mental illness, retardation, or addiction, be hospitalized in a mental health facility for a period not to exceed forty days for observation and examination. During the observation period, procedures for civil commitment may be initiated before the court having jurisdiction over the individual. The Prosecuting Attorney of the county within which the crime occurred must be notified of any hearing conducted within five years of the alleged crime relating to the commitment of the individual and shall have the right to be heard at any such hearing."

In order for the individual to be committed, the Court must make a finding that the individual is mentally ill, retarded, or addicted, and as a result is likely to cause serious harm to himself or to others if allowed to remain at liberty. The Court must also find that there are no less

defendant's disposition should they acquit him by reason of insanity in order to assess for themselves the likelihood of "early" release.

In *State v. McClure*, 163 W.Va. 33, 253 S.E.2d 555 (1979), the defendant did not testify and was convicted of breaking and entering. Although the court instructed the jury that defendant's failure to take the stand was not to be considered as a circumstance tending to show his guilt, the jury sent a message to the judge asking if there was any way to get the defendant to take the stand. Defense counsel moved that the instructions be re-read to the jury. The judge denied the motion and had the jury informed that their request could not be honored. We reversed, saying:

> We have consistently held, and, indeed, it is axiomatic, that instructions given to the jury should contain clear, distinct, and unambiguous statements of law....
>
> The implicit, though unarticulated, rationale behind these requirements is that the jury must be clearly and properly advised of the law in order for it to render a true and lawful verdict.
>
> ... we conclude that where it clearly and objectively appears in a criminal case from the statements of the jurors that the jury has failed to comprehend an instruction on a critical element of the

crime or a constitutionally protected right, the trial court must on request of defense counsel, reinstruct the jury.

163 W.Va. at 37, 253 S.E.2d 555.

In the case before us, although the question of disposition on a verdict of not guilty by reason of insanity was not technically a "critical element of the crime," resolution of that issue was clearly critical to the jury in reaching its verdict.

In *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981), the defendant appealed his conviction of first-degree sexual assault. One of defendant's assignments of error was the court's failure to grant his request that the jury be instructed on the consequences of a verdict of not guilty by reason of insanity. Reversing defendant's conviction, we stated:

> In [*State v.*] *Nuckolls, supra* [166 W.Va. 259, 273 S.E.2d 87 (1980)], we found that it was unfair to deny a defendant a requested jury instruction on his disposition should the jury find him not guilty by reason of insanity. 166 W.Va at 263, 273 S.E.2d at 90. There is potential for a grave miscarriage of justice if the jury is confused about the consequences of such a verdict....

restrictive alternatives than commitment appropriate for the individual. Once these findings have been made, the Court may order the individual to a mental health facility for an indeterminate period not exceeding six months.

If the order is for a temporary observation period, the Court, at any time prior to the expiration of that period, may hold another hearing on the basis of a report by the chief medical officer of the mental health facility where the patient is confined to determine whether the original order should be modified or changed to an order of indeterminate hospitalization. At the conclusion of the hearing, the Court shall order indeterminate hospitalization or dismissal of the proceedings.

An order for an indeterminate period expires of its own terms at the expiration of two years unless prior to the expiration the Department of Health, upon findings based on an examination of the patient by the physician or a psychologist, extends the order for indeterminate hospitalization.

An involuntarily committed patient cannot be discharged unless the chief medical officer of the mental hospital facility where the patient is

confined makes a determination that the conditions justifying involuntary hospitalization no longer exist or that the individual can no longer benefit from hospitalization. Therefore, in order for the individual to be released either at the expiration of a temporary observatory period or at the expiration of the indeterminate period, there must be a showing based on the sworn testimony of the examining physician or the chief medical officer of the mental health facility that any likelihood of the defendant causing serious harm to himself or to others if allowed to remain at liberty no longer exists.

Furthermore, no person committed to a mental health facility subsequent to a verdict of not guilty by reason of insanity shall be discharged unless the physician in charge gives notice to the committing court and to the Prosecuting Attorney of the county where the crime occurred. If the Court objects to the discharge of the individual, a hearing shall be held at which it must be shown that the individual is not likely to cause serious harm to himself or to others if allowed to remain at liberty in order for the individual to be discharged.

There is evidence in the instant case that the jury was confused about the insanity issue. After a trial judge refused the requested instruction and the jury retired for deliberation, the foreman returned to the court to ask if the jury could make a recommendation regarding its verdict. The trial judge asked if the question concerned the disposition of the appellant. The foreman replied that it did, and the judge refused to allow the jury to make a recommendation. We may fairly infer that the jury was uncertain about the consequences of its findings. Thus, the denial of the instruction might have undermined the jury's further deliberations.

167 W.Va at 416–417, 280 S.E.2d at 549.

Although the trial judge in the case before us granted defendant's request for an instruction on the consequences of an insanity verdict, the jury apparently remained confused on the issue. The instruction, which faithfully reflects the statutory provisions on commitment, was necessarily long and complex. Although a re-reading of the charge may well not have answered all the questions in the minds of the jury, it was the judge's duty, on defendant's motion, to attempt to alleviate the obvious confusion of the jury on this issue critical to their verdict. Accordingly, defendant's conviction is reversed and the case is remanded for a new trial.

Reversed and remanded.