665 S.E.2d 674

**STATE of West Virginia, Plaintiff
Below, Appellee,**

v.

**Joshua Lee SLATER, Defendant
Below, Appellant.**

**No. 33659.**

Supreme Court of Appeals of
West Virginia.

Submitted April 15, 2008.

Decided June 9, 2008.

Dissenting Opinion of Justice
Starcher July 23, 2008.

Concurring Opinion of Justice
Benjamin July 30, 2008.

**502**

Darrell V. McGraw, Jr., Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, WV, for the State.

Ira Mickenberg, Esq., Gregory L. Ayers, Esq., Public Defender Corporation, Charleston, WV, for Joshua Lee Slater.

MAYNARD, Chief Justice:

The appellant, Joshua Lee Slater, appeals his convictions for kidnaping, domestic battery, wanton endangerment, and daytime burglary by breaking and entering. He also appeals his sentence for these crimes which amounts to life with mercy plus twenty-one years. For the reasons that follow, we affirm.

## I.

## FACTS

Joshua Lee Slater, the appellant, lived with his long-time girlfriend, Angela Walls, and their two small children in a trailer in Sissonville. On November 29, 2005, the appellant and Ms. Walls got into an argument. At some point, the appellant hit Ms. Walls on the side of her head and threw a hammer, hitting her in the leg and causing minor bruising.

When Ms. Walls indicated that she was taking the children to her mother's house, the appellant ordered her to stay at gunpoint. He also threatened to kill Ms. Walls' entire family. The appellant then ordered Ms. Walls into the bedroom where he pointed a twelve-gauge shotgun at her and threatened to shoot her. While they were in the bedroom, the appellant ordered Ms. Walls to change into camouflage clothing. After she did so, he informed her that she had 14 hours to live, and then he was going to take her into the woods, tie her to a tree, "buckshot" her in both her knees, knock her teeth out so there would be no dental records, and set her body on fire so she could not be found. Shortly thereafter, Ms. Walls and the children escaped through the bedroom window, and Ms. Walls drove to her mother's house.

Subsequently, the appellant went to Ms. Walls' mother's house. By that time, Ms. Walls, her mother Lori Walls, and the children had fled to Ms. Walls' grandmother's house. The appellant attempted to open the door to the Walls' house with a key but was unable to do so. He then broke the window in the back door with the barrel of a gun and kicked in the back door. A short time later, a police officer arrived at the Walls' house.

Although the appellant fled the house, he was arrested later that day.

The appellant was found guilty by a jury of kidnaping, for which he was sentenced to life with mercy; domestic battery, for which he received a determinate term of one year; wanton endangerment, for which he was sentenced to a determinate term of five years; and daytime burglary by breaking and entering, for which the trial court sentenced him to an indeterminate term of not less than one nor more than fifteen years. These sentences are to run consecutively. The appellant now appeals his convictions and sentence.

## II.

### DISCUSSION

*1. Sufficiency of Evidence to Support Burglary Conviction*

First, the appellant argues that the evidence was legally insufficient to sustain the burglary conviction because the evidence failed to show that his entry into Lori Walls' house was unauthorized. In considering this issue, we are guided by the following standard of review:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus Point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Lori Walls, the owner of the house the appellant was convicted of burglarizing, testified that the appellant previously had lived in her house for many years, had a key to the house, was considered a member of the family, and had full access to her house. It is the appellant's contention that because he was authorized to enter the Walls' home, the elements of burglary are not present in this case. According to the appellant, unauthorized entry is an essential element of daytime burglary by breaking and entering. To support this assertion, the appellant cites *State v. Plumley,* 181 W.Va. 685, 384 S.E.2d 130 (1989), and *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981), in which this Court stated that "burglary is complete once there has been an unauthorized entry[.]" 169 W.Va. at 26, 285 S.E.2d at 434.

We find that an unauthorized entry is not an element of daytime burglary by breaking and entering. First, neither the statutory language nor this Court's holding defining the crime of burglary indicate that an unauthorized entry is an element of daytime burglary by breaking and entering. According to W.Va.Code § 61-3-11(a) (1993), in pertinent part, the elements of burglary by breaking and entering are: "If any person shall ... in the daytime, break and enter, the dwelling house ... of another, with intent to commit a crime therein, he shall be deemed guilty of burglary." Further, in Syllabus Point 2 of *State v. Louk,* 169 W.Va. 24, 285 S.E.2d 432 (1981), we held, with regard to the elements of burglary:

The crime of burglary is defined in W.Va.Code, 61-3-11(a), as: "Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit [a crime] therein, he shall be deemed guilty of burglary."

There simply is nothing in the statutory language and in our holding in *Louk* to indicate

that unauthorized entry is an element of daytime burglary by breaking and entering.[1]

In addition, we find that the appellant's reliance on *State v. Plumley* is misplaced. In *Plumley,* the defendant was convicted of burglary in the nighttime in addition to other crimes. The defendant had gained entry into the victim's home for the ostensible purpose of using the victim's telephone. The issue for this Court was whether the victim's consent to enter was an absolute defense to the crime of burglary because the consent meant that there could be no unauthorized entry. In discussing this issue, we explained:

> Thus, under *W. Va.Code,* 61–3–11(a) [1973], the essential requirement of burglary committed in the nighttime is that the defendant "enter ... with intent to commit a felony or any larceny."[2] It is the intent and acts of the accused that the statute makes controlling. There is no language in the statute that the entry must be by force or that it must be against the will of the occupant. The plain language of the statute indicates that the consent of the occupant obtained through fraud or threat of force is not a defense to the crime of burglary. Under statutes that define burglary as an entry without breaking with intent to commit a criminal offense, it is uniformly held that consent to enter is not a defense when the accused is shown to have entered through fraud or threat of force with the requisite criminal intent.

181 W.Va. at 688–689, 384 S.E.2d at 133–134 (footnote added and footnotes omitted). We further indicated,

> In *State v. Louk,* 169 W.Va. 24, 26, 285 S.E.2d 432, 434 (1981), we noted the burglary statute had expanded to some degree the common law crime of burglary. However, this expansion was not material to the *Louk* decision. The West Virginia

burglary statute's departure from the traditional common law requirement of "breaking" is significant because breaking was a concept designed to keep out intruders, or to prevent trespass into the building, and a person with authority to enter could not be said to have committed a breaking. However, the common law requirement of "entry" was a physical concept, and even the slightest entry by any part of the perpetrator's body was sufficient to satisfy the requirement.

181 W.Va. at 689, 384 S.E.2d at 134 (citations omitted). Moreover, we stated,

> Because the legislature has deleted the "breaking" requirement with regard to entry in the nighttime, the statutory offense of burglary of the dwelling house of another involves no unlawfulness of entry except as the entry becomes unlawful by reason of the criminal intent of the person entering.[3]

*Id.* (Footnote added and footnotes omitted.). We ultimately determined that consent to enter is not an absolute defense to a charge of burglary in the nighttime, and we held in Syllabus Point 1,

> Under *W.Va.Code,* 61–3–11(a) [1973], the essential requirement of burglary committed in the nighttime is that the defendant "enter ... with intent to commit a felony or any larceny." The intent and the acts of the defendant are controlling, and the consent of the occupant to enter is not a defense when the defendant is shown to have entered through fraud or threat of force with the requisite criminal intent. The statutory requirement of entry is also fulfilled when a person with consent to enter exceeds the scope of the consent granted.

■ At first blush, one may infer from our discussion in *Plumley* above that the crime

---

1. We find the statement in *Louk* upon which the appellant relies, that "burglary is complete once there has been an unauthorized entry[,]" to be dicta. Significantly, this language from *Louk,* which applied to both nighttime and daytime burglary, was later criticized by the Court in *State v. Wallace,* 205 W.Va. 155, 517 S.E.2d 20 (1999), in which we opined that "[i]t is by no means clear that [the] nighttime burglary statute requires an unauthorized entry." 205 W.Va. at 161 n. 10, 517 S.E.2d at 26 n. 10.

2. The current version of the statute says "with intent to commit a crime therein[.]"

3. We also recognized that "[e]ven under statutes that require an unlawful entry, most jurisdictions have held that entry, made with the necessary criminal intent, is unlawful." 181 W.Va. at 689 fn. 7, 384 S.E.2d at 134 fn. 7 (citations omitted).

of daytime burglary by breaking and entering requires an unauthorized entry. However, that inference is contradicted by our holding in *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982). The issue in *Ocheltree* was whether criminal trespass is a lesser included offense of burglary. In considering this issue, we reasoned as follows:

> The elements necessary to prove burglary under *W. Va.Code*, 61–3–11(a) [1973], therefore, are: (1) in the daytime, (2) breaking and entering, (3) the dwelling house of another, (4) with the intent to commit a felony or any larceny therein. The elements necessary to the proof of criminal trespass under *W. Va.Code*, 61–3B–2 [1978], are: (1) a knowing entry, (2) in a structure or conveyance, (3) without being authorized, licensed or invited.
>
> .... To prove the crime of trespass, under *W. Va.Code*, 61–3B–2 [1978], the State must show .... that the entry was without authorization, license or invitation.... [T]here is no similar requirement under *W. Va.Code*, 61–3–11(a) [1973].

170 W.Va. at 71, 289 S.E.2d at 745. We further quoted with approval language from *Estep v. State*, 271 Ind. 525, 394 N.E.2d 111, 113 (1979), *overruled on other grounds, Jones v. State*, 438 N.E.2d 972 (Ind.1982), as follows:

> Although the entry incidental to a burglary may be a trespass ... it does not follow, that it must be. One may never have been denied entry to his neighbor's house, he may even have been expressly authorized to enter it at any time. Yet, if he enters by "breaking," as that term has

been employed in defining burglary, with the intent to commit a felony therein, he commits a burglary—although not a trespass, because the entry was authorized.

170 W.Va. at 71 fn. 4, 289 S.E.2d at 745 fn. 4. In Syllabus Point 2 of *Ocheltree*, we held that "[c]riminal trespass, as defined by *W.Va. Code*, 61–3B–2 [1978], is not a lesser included offense of burglary by breaking and entering as defined by *W. Va.Code*, 61–3–11(a) [1973]." It is clear from both our discussion and holding in *Ocheltree* that an unauthorized entry is not a required element of burglary by breaking and entering. Therefore, we hold that an unauthorized entry is not a required element of the crime of daytime burglary by breaking and entering as defined in W.Va.Code § 61–3–11(a).

■ In light of our holding, it is not relevant whether the appellant's entry in Lori Walls' house was authorized. Rather, the evidence had to show that the appellant committed a breaking and entering with the intent to commit a crime therein. In the instant case, there was sufficient evidence for a jury to find beyond a reasonable doubt that the appellant broke a window and entered Lori Walls' house with the intent to harm Angela and/or Lori Walls. Therefore, we affirm the appellant's conviction for daytime burglary by breaking and entering.

### 2. Sufficiency of the Evidence to Support Kidnaping Conviction

Second, the appellant contends that the evidence was legally insufficient to sustain his kidnaping conviction.[4]

---

**4.** W.Va.Code § 61–2–14a provides, in applicable part:

> Any person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself or others from bodily harm or of evading capture or arrest after he or she or they have committed a crime shall be guilty of a felony and, upon conviction, shall be

punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve [§§ 62–12–11 et seq.], chapter sixty-two of this code, shall not be eligible for parole: Provided, That the following exceptions shall apply: (1) A jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve; (2) if such person pleads guilty, the court may, in its discretion, provide that such person shall be eligible for parole in accordance with the provisions of said article twelve, and, if the court so provides, such person should be eligible for parole in accordance with the provisions of said article twelve in the same manner and with like effect as if such person had been found guilty by

The record reveals that the appellant requested to be sentenced under W.Va.Code § 61–2–14a(a)(4), which provides that the defendant's sentence shall be a definite term of not less than ten nor more than thirty years where the court finds that the victim was returned, or was permitted to return alive without bodily harm, and without any concession having been paid or yielded. The trial court found, however, that a concession was paid or yielded in that the appellant "was able to gain control over [the victim] and kept her from leaving[.]." Thus, the court found that subsection (4) of the statute did not apply, and sentenced the appellant to life with mercy as recommended by the jury.

The appellant first notes that under our kidnaping statute, the State must prove two distinct elements to establish the crime of kidnaping—the act of confining the victim and the intent to use that confinement to obtain some sort of concession. He then claims that the trial court's finding that a concession was paid or yielded was error. This is due to the fact that the concession element, as found by the trial court, is the same as the element of confining the victim. According to the appellant, this is insufficient because the concession must be something different from, and in addition to, the act of confinement. Moreover, the appellant avers that this Court is bound by the trial court's finding of fact on the element of a concession being paid or yielded.[5]

■ We find the appellant's argument to be without merit. This Court previously has explained that W.Va.Code § 61–2–14a provides a maximum sentence of life with or without mercy, based on the jury's findings, and that any additional findings of fact made by the trial court operates to reduce the defendant's sentence from the maximum sentence as found by the jury. *See State v. Haught,* 218 W.Va. 462, 624 S.E.2d 899 (2005). We have also held:

> The provisions of the statute relating to the various punishments to be imposed upon a person convicted of the crime of kidnaping, and which punishments depend upon and are governed by the evidence introduced at the trial, do not state or prescribe any element of the offense created by the statute.

Syllabus Point 2, *Pyles v. Boles,* 148 W.Va. 465, 135 S.E.2d 692 (1964). Clearly, the trial court's finding of fact that there was a concession gained was made with regard to sentencing and had nothing to do with the elements of the crime of kidnaping as found by the jury.

■ Our review of the evidence indicates that the jury could have found beyond a reasonable doubt that the appellant confined Ms. Walls for one of the purposes enumerated in the statute. For example, the jury could have found that the appellant confined Ms. Walls for the purpose of keeping his children with him. The jury also could have found that the appellant confined Ms. Walls for the purpose of killing her that evening in the woods, under cover of darkness with the intent "of evading capture or arrest." W.Va. Code § 61–2–14a(a). Accordingly, we reject the appellant's contention of insufficient evidence to sustain his kidnaping conviction, and we affirm the conviction.[6]

---

the verdict of a jury and the jury had recommended mercy; (3) in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than twenty nor more than fifty; (4) in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him or her, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than ten nor more than thirty.

5. The State claims that the appellant failed to preserve this assignment of error by failing to raise it until a post-trial motion for a new trial. The appellant counters that because the trial court made its finding of fact after the trial, it was impossible for the appellant to raise the alleged error earlier. We deem it preferable in this instance to address the substantive merits of the appellant's assignment of error.

6. Even if the trial court's finding of fact regarding the concession is error, it is harmless with regard to the appellant's sentence. In order to receive a reduction in sentence pursuant to ei-

### 3. The Constitutionality of the Appellant's Sentence

The appellant also assigns as error his sentence of life with mercy plus sixteen years as excessive and violative of the proportionality and cruel and unusual punishment clauses of the constitution.[7] The appellant bases his argument on the fact that he is 23 years old and has no prior criminal record. In addition, he says that the only injuries he caused were minor bruises to Ms. Walls' face and leg which required no medical treatment, and the only damage he caused was a broken window in the back door of Lori Walls' house. Moreover, the appellant notes that both Ms. Walls and her mother, Lori Walls, spoke on his behalf at sentencing and asked the court for mercy. Finally, the appellant opines that the facts of this case are much less egregious than those in *State v. Richardson*, 214 W.Va. 410, 589 S.E.2d 552 (2003), in which this Court found that sentences of thirty years for kidnaping and five for wanton endangerment were unconstitutionally harsh.

Our standard of reviewing sentencing orders is as follows: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997). We have also held, however, that "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504(1982).[8]

We conclude that the appellant's sentence is not subject to our review because the sentence imposed for each conviction is within the statutory limit and the appellant has identified no impermissible factor[9] upon which his sentence is based.[10] While the

---

ther W.Va.Code § 61–2–14a(a)(3) or (4), the trial court must find that the victim was returned, or permitted to return, alive, without bodily harm. The trial court properly found that Ms. Walls was not returned or permitted to return but rather she escaped.

7. The parties to this case agree that the appellant is eligible for parole after thirteen years, one month and eleven days, or thirteen years and three months, depending on whether he is granted good time on the domestic battery conviction.

8. In *State v. Houston*, 166 W.Va. 202, 209, 273 S.E.2d 375, 379 (1980), this Court opined that "[w]ith the exception of the life recidivist statute discussed in *State v. Vance*, [164 W.Va. 216, 262 S.E.2d 423 (1980)], we do not believe that the disproportionality principle can have any significant application other than to [an open-ended] sentencing statute." Such a statute provides for no maximum sentence. The Court in *Houston* considered the constitutionality of a sentence under the robbery by violence statute which provided for a sentence of "not less than ten years." While the Court in *Houston* referred to the kidnaping statute as an open-ended sentencing statute, that reference was to the 1965 version which indicated a term of years not less than twenty or a term of years not less than ten if the trial court made a finding that the victim was returned or permitted to be returned and depending upon the court's finding with respect to whether the defendant inflicted bodily harm on the victim and whether ransom, money, or other concession

was made. The current version of the statute does not provide for open-ended sentencing.

9. At the appellant's sentencing, Angela Walls urged the court to be lenient. The trial court rejected Ms. Walls' plea, and stated that Ms. Walls exhibited the behavior of an abused woman. In his reply brief, the appellant cites the trial court's statement as an impermissible factor in sentencing the appellant. We disagree. While the trial court's belief that Ms. Walls was an abused woman may have been a reason for the court to reject her plea for leniency, it was not stated by the court as a factor in the appellant's sentencing.

10. The kidnaping statute, W.Va.Code § 61–2–14a, provides for a sentence of life with or without mercy, dependant upon the jury's recommendation, in the absence of certain findings of fact made by the trial court. Because the trial court in the instant case was unable to make these findings, it had no discretion but to sentence the appellant to life with mercy as recommended by the jury. The trial court sentenced the appellant to twelve months for domestic battery in accord with W.Va.Code § 61–2–28(a) (2004), which provides for a sentence of not more than twelve months. The appellant's sentence for wanton endangerment of five years is in accord with W.Va.Code § 61–7–12(1994), which provides for confinement in the penitentiary "for a definite term of years of not less than one year nor more than five years, or ... confined in the county jail for not more than one year, or fined not less than

appellant cites our per curiam opinion of *State v. Richardson* for support, Richardson is a deviation from our established law. While the defendant's sentence in *Richardson* was within statutory limits and no impermissible sentencing factors were indicated, the Court in Richardson nevertheless conducted a proportionality analysis.[11] We deem it generally to be the better practice to decline to review sentences that are within statutory limits and where no impermissible sentence factor is indicated in accord with Syllabus Point 4 of *State v. Goodnight.* Therefore, we find no merit to the appellant's alleged sentencing error, and we affirm his sentence.

### 4. Alleged Instructional Error Regarding the Law of Wanton Endangerment

The appellant's next assignment of error is that the trial court failed to give additional instructions to the jury concerning the law on wanton endangerment. During deliberations, Jurors sent a note to the trial judge asking two questions: (1) "Under 'wanton endangerment' does it matter if the gun is loaded?" and (2) "Does 'wanton endangerment' lie on the one with the gun or the perception of [the] person it is pointed at?" After reading the questions into the record, the trial court informed the parties, "And I'm going to bring them in and tell them that they have all of the legal instructions that I can give them in order to find their verdict," to which the appellant's counsel responded, "Yes, ma'am." The trial court then brought the jury into the courtroom and advised them that "I instruct you that you have the Court's instructions. That's the only law that I can

provide for you upon which you can base your verdicts."

The appellant now contends that it was reversible error for the trial court not to answer the jury's questions because both questions concerned essential elements of wanton endangerment. Also, the questions indicated that the jurors were confused about the proper law to apply. The State responds that the appellant forfeited this alleged error by failing to raise it below, and that the trial court's decision not to answer the questions does not amount to plain error.

 Because the appellant failed to preserve the alleged error, we will review it under our plain error analysis. We have held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

---

two hundred fifty dollars nor more than two thousand five hundred dollars, or both." Finally, the appellant's sentence of one to fifteen years for daytime burglary is within the statutory limits of W.Va.Code § 61–3–11(a) (1993). With regard to the fact that the appellant's sentences run consecutively, this is consistent with the statutory presumption. According to W.Va.Code § 61–11–21 (1923),

When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement, unless, in the discretion of the trial court, the

second or any subsequent conviction is ordered by the court to run concurrently with the first term of imprisonment imposed.

*See also State ex rel Cobb v. Boles*, 149 W.Va. 365, 368, 141 S.E.2d 59, 61 (1965) ("This judgment order makes no provision that the two sentences thus purportedly imposed upon the petitioner shall run concurrently, therefore, under the provisions of Code, 61–11–21, they must run consecutively.").

11. *See also State v. David D. W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003), another per curiam opinion in which established law was disregarded in order to find that a sentence within statutory limits was unconstitutional.

Syllabus Point 7, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

■ Regarding the trial court's duty to reinstruct the jury, this Court has held that

Where it clearly and objectively appears in a criminal case from statements of the jurors that the jury has failed to comprehend an instruction on a critical element of the crime or a constitutionally protected right, the trial court must, on request of defense counsel, reinstruct the jury.

Syllabus Point 2, *State v. McClure*, 163 W.Va. 33, 253 S.E.2d 555 (1979).

■ We find that the trial court did not err in declining to answer the jury's questions. The jury instruction defining the crime of wanton endangerment was as follows: "The Court instructs the jury that any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony." According to our wanton endangerment statute in pertinent part: "Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony[.]" W.Va.Code § 61–7–12. The trial court's instruction to the jury on wanton endangerment is identical to the statutory language. This Court has held that "[a]n instruction for a statutory offense is sufficient if it adopts and follows the language of the statute, or uses substantially equivalent language and plainly informs the jury of the particular offense for which the defendant is charged." Syllabus Point 8, *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975). Because the trial court's instruction was identical to the statutory language, we conclude that it was sufficient.

■ If the appellant's counsel had moved for the trial court to re-instruct or re-read the jury on the law of wanton endangerment in light of the jury's confusion over the law,

the court would have had a duty to do so. *See State v. Lutz*, 183 W.Va. 234, 395 S.E.2d 478 (1988) (finding reversible error for the judge to deny defendant's motion to orally re-instruct the jury in light of the jury's evident confusion over the law).[12] However, counsel did not request that the instruction be re-read. Instead, the jury requested that the trial court discuss factors that are not set forth as elements of wanton endangerment in the statute. The trial court simply had no duty to do this. As explained by the trial court, the jury had been instructed on the only law upon which it could base its verdict. Therefore, we find no error in the trial court's failure to answer the jury's questions.

### 5. Alleged Instruction Error Regarding Jury Inferences

■ The appellant's final ground for error is the trial court's instruction that it would be reasonable for the jury to infer that the appellant intended his acts and the natural and probable consequences of those acts. According to the appellant, this instruction violates the United States Supreme Court case of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and this Court's holding in *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429 (1979), by placing the burden on the defense to rebut the inference, by stating an opinion by the court regarding whether the jury should adopt the inference, and by instructing the jury that it must adopt the inference. The State asserts that this alleged error is not reviewable by this Court because the appellant waived the error at trial. We agree with the State.

The record reveals that when the trial court was discussing its charge to the jury, the following conversation occurred between the trial court and the appellant's counsel:

[Appellant's counsel]: .... I believe I'm entitled to—or I'm going to ask you for an

---

12. The Court in *Lutz* explained,

Although the trial judge in the case before us granted defendant's request for an instruction on the consequences of an insanity verdict, the jury apparently remained confused on the issue. The instruction, which faithfully reflects the statutory provisions on commitment, was necessarily long

and complex. Although a re-reading of the charge may well not have answered all the questions in the minds of the jury, it was the judge's duty, on defendant's motion, to attempt to alleviate the obvious confusion of the jury on this issue critical to their verdict.

183 W.Va. at 237, 395 S.E.2d at 481.

instruction that relates to the incidental nature of this kidnaping.

The Court: Uh-huh.

[Appellant's counsel]: That would be my only comment. In all other respects, I have no objections. I would just ask you to give an instruction that—to the extent that the alleged kidnaping was incidental to other crimes.

After discussing the appellant's counsel's requested instruction on the incidental nature of the kidnaping, the following exchange occurred:

The Court: All right. I want to take some time during the luncheon recess and plod about this incidental issue, because as I understand it, there are no other objections to the charge. Is that correct?

[Appellant's counsel]: I have none, your Honor.

It is clear from this portion of the trial transcript that the appellant's counsel affirmatively waived any alleged error regarding the instruction now complained of.

▇▇▇▇ This Court has held that when a deviation from the law is waived, there is no error. In Syllabus Point 8 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we explained:

Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right— the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Based on this rule, we find that the appellant waived any error in the allegedly improper instruction. As a result, there is no error, and this Court need not consider the issue.

## III.

## CONCLUSION

For the reasons set forth above, we affirm the appellant's convictions for kidnaping, domestic battery, wanton endangerment, and daytime burglary by breaking and entering. We also affirm the appellant's sentence of life with mercy plus twenty-one years for these crimes.

Affirmed.

Justice STARCHER dissents and files a dissenting opinion.

Justice BENJAMIN concurs and files a concurring opinion.

STARCHER, Justice, dissenting:

(Filed July 23, 2008)

The facts of this case alone are such that it gives one pause to dissent to the majority opinion; however, I am compelled to dissent because I believe it is clear that this case falls within the parameters of the facts discussed in an earlier separate opinion, *State v. Haught*, 218 W.Va. 462, 624 S.E.2d 899 (2005).. I continue to be concerned that this Court is not complying with the decisions in two important United States Supreme Court cases. Therefore, I dissent from the majority opinion because it has again failed to follow the U.S. Supreme Court rulings of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

West Virginia law remains inconsistent with federal law. In *Apprendi*, the U.S. Supreme Court stated that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–63. In *Blakely*, the Court further defined statutory maximum as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S.Ct. at 2537. The holdings of these two cases require the

jury, not a trial judge, to make all findings of fact related to sentencing.

The current state of law in West Virginia seems to be in direct opposition, as expressed in Syllabus Point 1 of *State v. Farmer*, 193 W.Va. 84, 454 S.E.2d 378 (1994):

> Pursuant to West Virginia's kidnapping statute set forth in *W. Va.Code*, 61–2–14a [1965], a trial judge, for purposes of imposing a sentence on a defendant . . . has the discretion to make findings . . . as to whether ransom, money, or any other concession has been paid or yielded for the return of the victim. Because the findings by the trial judge are made solely for the purpose of determining the sentence to be imposed on a defendant and are not elements of the crime of kidnapping, *West Virginia Constitution* art. III, secs. 10 and 14, relating to a ·defendant's due process rights and right to a trial by jury, are not violated.

As I stated previously, "Our Court should, in accordance with *Blakely*, have clarified that *W. Va.Code*, 61–2–14a(a) does not violate a defendant's 6th Amendment jury trial rights so long as a jury finds the facts necessary for determining the sentence, not a judge. . . ." *Haught*, 218 W.Va. at 468, 624 S.E.2d at 905 (2005) (Starcher, J., dissenting and concurring). Otherwise, sentences based on trial judge findings of fact and the underlying convictions face the possibility of reversal by a federal court. Id. at 467, 624 S.E.2d at 904.

The majority in *Haught* failed to conform our case law with federal law, and has repeated this error in the instant case. The trial judge found that a concession had been gained, and used this finding to sentence the appellant to life with mercy. The majority states that since the trial court made the finding of fact in relation to sentencing and not the elements of kidnaping, there was no error. It then implies that because a jury could have found any of the enumerated purposes, there was no harm in the trial judge's determination. However, that is not the rule stated in *Apprendi* and *Blakely*. It does not give discretion as to whether a jury could have made the same finding as a trial judge, but only that it did make such a finding. If the jury does not find beyond a reasonable doubt that the appellant gained a concession, *Blakely* dictates that the trial judge cannot make such a finding when sentencing without violating the appellant's Sixth Amendment trial by jury rights. The trial judge in the instant case, by determining a concession was gained, has done just that.

The judge's role in a trial is to make determinations of law; the jury's role is to make determinations of fact. West Virginia's law as it now stands allows a trial judge to invade the province of a jury and make factual determinations. This is in direct violation of the United States Constitution as articulated in *Apprendi* and *Blakely* and the majority opinion has simply overlooked this issue.

I respectfully dissent.

BENJAMIN, Justice, concurring:

(Filed July 30, 2008)

I agree with the majority opinion but write separately to address the issue raised in the dissenting opinion.

According to the dissent, the majority opinion is inconsistent with the United States Supreme Court's rulings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This simply is not true. As this Court explained in *State v. Haught*, 218 W.Va. 462, 624 S.E.2d 899 (2005), *Apprendi* and *Blakely* stand for the principle that any fact other than a prior conviction that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In contrast, our kidnaping statute does not provide for the *enhancement* of a defendant's sentence beyond the statutory maximum based on additional facts found by the trial judge, but rather provides for the possible *reduction* of a defendant's sentence based on the trial judge's additional findings. Because *Apprendi* and *Blakely* are not applicable to the instant facts, those cases were properly omitted from the discussion in the majority opinion.

Thus, for the reason stated above, I concur with the majority opinion.