# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-0273** (Mercer County 11-F-325)

**Corey Christopher Samuel,**
**Defendant Below, Petitioner**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Corey Christopher Samuel, by counsel Henry L. Harvey and Joseph T. Harvey, appeals the order imposing sentence and denying petitioner's post-trial motions following his conviction for murder in the first degree. Respondent the State of West Virginia, by counsel Scott E. Johnson, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

During the late night and early morning hours of September 12 and 13, 2009, petitioner was at Club Savoy in Mercer County with his friend, Marvin "Hammer" Hill. Shortly after everyone left the club, a girl returned to the club and told the co-owner, Deborah "Trixie" Brown, that there was a problem in the street and that the police may be needed. Ms. Brown called police and followed the other co-owner out of the club. Ms. Brown's nephew, Stephen Brown, Jr. ("Mr. Brown"), walked to the scene of the argument ahead of his aunt because they heard that Ms. Brown's son may be involved. Mr. Brown walked toward petitioner, and petitioner told Mr. Brown not to "run up on [him]." Mr. Brown replied that he just wanted to see if his cousin was alright. Petitioner pulled a chrome gun from his waistband, pointed it at Mr. Brown, and fired.[1] The bullet did not hit Mr. Brown, but it passed close enough to his head to leave ringing in his right ear. The bullet also reportedly passed by Ms. Brown's face. According to Ms. Brown, petitioner then got into a car and sped away. After petitioner left the scene, Ms. Brown stood up and saw a body on the ground. Ms. Brown and a relative rolled the body over and discovered that it was Dwayne Steptoe. Ms. Brown and another person attempted to revive

---

[1]In his brief, Petitioner fails to set forth his version of the events on September 13, 2009, but it is clear from the latter part of his brief that he contends a friend fired the gun on petitioner's behalf.

1

Mr. Steptoe, but they were unsuccessful. The medical examiner confirmed that Mr. Steptoe died from a gunshot wound to the upper right chest.

Petitioner left the area and went to North Carolina where he was arrested on unrelated charges. Petitioner was indicted in Mercer County for one count of murder in the first degree and one count of unlawful possession of a firearm by a convicted felon. In May of 2012, petitioner was tried before a jury which found him guilty of murder in the first degree. The jury recommended mercy.[2]

Petitioner requested a new trial, and the circuit court held a hearing on that motion on February 20, 2013. On that same date, the circuit court signed an order denying petitioner's motion for a new trial. In that order, the circuit court imposed sentence for murder in the first degree, ordering that he be sentenced to a term of incarceration for life with mercy, making him eligible for parole in fifteen years, with credit for time served. It is from that order that petitioner appeals.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, in part, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011). Further, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008). In addition,

> "'"[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.,* 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus,* 207 W.Va. 436, 533 S.E.2d 662 (2000).

Syl. Pt. 1, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011).

In his appeal, petitioner asserts four assignments of error. First, petitioner argues that the State infringed upon his Fifth Amendment right to remain silent and shifted the burden of proof by asking a law enforcement officer witness about what petitioner "did not tell [him]." Petitioner asserts that the during the questioning of law enforcement officer Jarred Waddell, the State engaged in impermissible burden shifting by asking the officer about things petitioner did not say. The testimony at issue relates to whether petitioner told the officer whether his friend shot

---

[2]The jury also found that a firearm was used in the commission of the crime. The State filed a habitual offender information against petitioner on May 24, 2012, and an amended habitual offender information on May 30, 2012. Petitioner was arraigned on that information and waived his right to a speedy trial as to the charge of unlawful possession of a firearm by a felon. On September 19, 2012, the circuit court dismissed the information without objection from the State.

another person to whom petitioner owed money or petitioner's fear of going to Bluefield due to the outstanding debt. Petitioner contends that these questions were meant to infer that petitioner was required to go to police and tell them who shot Mr. Steptoe. He argues that this questioning violated his Fifth Amendment right to remain silent. Although trial counsel for petitioner failed to object to this line of questioning, petitioner argues that plain error applies in this instance.

Officer Waddell testified that as a Greensboro, North Carolina, police officer, he had occasion to interview petitioner on July 6, 2010.[3] According to Officer Waddell's testimony, petitioner told the officer that he fled to North Carolina due to an altercation with subjects to whom he owed money and that during that altercation, petitioner's associate shot and killed someone on petitioner's behalf in Bluefield, West Virginia. Officer Waddell also testified that petitioner told him that he fled in fear for his life. Petitioner does not contest the fact that his statement to Officer Waddell was voluntary, subsequent to waiving his *Miranda* rights.

"'A litigant may not silently acquiesce to an alleged error . . . and then raise that error as a reason for reversal on appeal.' Syl. Pt. 1, in part, *Maples v. W.Va. Dep't of Commerce, Div. of Parks and Recreation*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 4, *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W.Va. 123, 727 S.E.2d 799 (2011). Due to the fact that petitioner did not object to the line of questioning at issue below, petitioner has waived his objection to this issue. For this reason, petitioner asserts that the plain error doctrine is applicable.

> 7. To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

> 8. Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right - the failure to make timely assertion of the right - does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

> 9. Assuming that an error is "plain," the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

Syl. Pts. 7, 8 & 9, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In this case, petitioner fails to present sufficient grounds to support the application of the plain error doctrine. Despite his contention to the contrary, the State's questions regarding what petitioner did and did not tell

---

[3]While in North Carolina, petitioner was arrested during the course of an unrelated burglary investigation.

3

Officer Waddell were proper under the circumstances. Because there is no plain error, the plain error doctrine is inapplicable to the facts of this case.

Petitioner's second and fourth assignments of error relate to comments made by the prosecutor during trial. Petitioner argues that the State's use of his nickname, "Murder," for purposes other than identification was highly inflammatory because it was designed to portray him as a dangerous individual and solely to appeal to the jury's emotions, passions, and prejudices. Petitioner filed a motion prior to trial to prevent the State from referring to petitioner by his nickname. In response, the State argued that the nickname would be used solely for identification purposes. Petitioner's counsel then withdrew the objection to the use of the nickname. When witness Marvin Hill was questioned during trial, the State established that Mr. Hill knew petitioner by the nickname "Murder", but continued to refer to petitioner as "Corey Murder" and "Murder Corey Samuels" at different times during Mr. Hill's testimony.

In his fourth assignment of error, petitioner argues that in closing argument the State impermissibly implied that petitioner was not allowed to use the defense of self-defense because he was a "drug dealer." During closing argument, the prosecutor said, "And it is a reasonable prudent person, not a self-described drug dealer. Review the Court's instructions. There is no self-defense here."

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995). Further, "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *Id.* Due to the fact that counsel failed to object to the use of petitioner's nickname or the comment made by the prosecutor during closing argument, this Court will only consider the claimed errors if the plain error doctrine applies. *See Miller* at 7, 459 S.E.2d at 118. The prosecutor's use of petitioner's nickname was isolated to the questioning of a single witness who admitted that he knew petitioner by that nickname. Counsel for petitioner had the opportunity during that questioning to object, but he failed to do so. The isolated remark by the prosecutor during closing that is arguably a misstatement of the law included the direction from the prosecutor to review the circuit court's instructions. Those instructions include an instruction that attorney arguments are not evidence. Based on the record before this Court, we conclude that the alleged errors were waived during trial by petitioner's failure to object to the same. We further find that the plain error doctrine is inapplicable under the facts of this case.

Finally, petitioner argues that the State placed a non-existent duty to retreat upon petitioner. During trial, the State repeatedly referenced petitioner's failure to jump in a car and flee from the alleged attackers, including asking why petitioner did not just leave without

shooting the victim. Petitioner argues that West Virginia Code § 55-7-22(c) permitted him to use deadly force outside of his residence because he felt threatened by the approaching crowd; therefore, he did not have a duty to retreat under the law. In support of this argument, petitioner points to his own testimony that he saw pipes or sticks in people's hands and that he had no doubt that those people intended to hurt him. Again, petitioner failed to object to these questions during trial. While West Virginia Code § 55-7-22(c) does permit the use of deadly force, petitioner ignores the portion of the statute that states that a person not engaged in unlawful activity *who is attacked* may use deadly force. Further, West Virginia Code § 55-7-22 addresses *civil* relief for persons resisting certain criminal activities. Therefore, the requirement that the killing be necessary is a restrictive condition placed upon the use of deadly force in self-defense. Under the facts of this case, the plain error doctrine is also inapplicable to this assignment of error.

Because the sentence imposed by the circuit court was within statutory limits and petitioner does not challenge the sentence itself, we conclude that the circuit court did not abuse its discretion in imposing sentence upon petitioner as set forth in its December 20, 2013 order. In addition, we find that the circuit court did not err in refusing to grant a new trial to petitioner.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II