# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Joshua Slater,**
**Petitioner Below, Petitioner**

**FILED**

September 27, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 12-0330** (Kanawha County 09-MISC-120)

**David Ballard, Warden, Mount Olive Correctional Center**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Joshua Slater, by counsel Edward L. Bullman, appeals the order of the Circuit Court of Kanawha County, entered February 22, 2012, denying his post-conviction habeas corpus petition. Respondent Warden David Ballard, by counsel Benjamin F. Yancey III, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner lived with his long-time girlfriend, Angela Walls, and their two small children in Sissonville, West Virginia. During an argument on November 29, 2005, petitioner hit Ms. Walls on the side of her head and threw a hammer, hitting her in the leg and causing minor bruising. When Ms. Walls indicated that she was taking the children to her mother's house, petitioner ordered her to stay at gunpoint. He also threatened to kill Ms. Walls' entire family. Petitioner then ordered Ms. Walls into the bedroom where he pointed a twelve-gauge shotgun at her and threatened to shoot her. While they were in the bedroom, he told Ms. Walls to change into camouflage clothing. After she did so, petitioner informed her that she had fourteen hours to live, and then he was going to take her into the woods, tie her to a tree, "buckshot" her in both her knees, knock her teeth out so there would be no dental records, and set her body on fire so she could not be found. Shortly thereafter, Ms. Walls and the children escaped through the bedroom window, and Ms. Walls drove to her mother's house.

Subsequently, petitioner went to Ms. Walls' mother's house. By that time, Ms. Walls, her mother Lori Walls, and the children had fled to Ms. Walls' grandmother's house. Petitioner attempted to open the door to the Walls' house with a key but was unable to do so. He then broke the window in the back door with the barrel of a gun and kicked in the back door. A short time later, a police officer arrived at the Walls' house. Although petitioner fled the house, he was arrested later that day.

1

Petitioner was found guilty by a jury of kidnaping, for which he was sentenced to life with mercy; domestic battery, for which he received a determinate term of one year; wanton endangerment, for which he was sentenced to a determinate term of five years; and daytime burglary by breaking and entering, for which the trial court sentenced him to an indeterminate term of not less than one nor more than fifteen years, with sentences to run consecutively. This Court affirmed petitioner's convictions following his direct appeal in *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008).

On March 7, 2009, petitioner, *pro se*, filed his initial petition for writ of habeas corpus. On August 20, 2009, through counsel, petitioner filed an amended petition for writ of habeas corpus and raised eight grounds for relief. On February 22, 2012, the circuit court denied this petition.

Requesting a new trial, petitioner raises two assignments of error on appeal. He challenges the constitutionality of the kidnaping statute, West Virginia Code 61-2-14a. Petitioner also challenges the trial court's jury instruction on the basis that it unconstitutionally shifted the burden of proof on the element of intent. After careful consideration of the record and the parties' arguments, this Court finds that the circuit court did not err in denying habeas corpus relief to petitioner.

We note that this Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

First, petitioner challenges the constitutionality of the kidnaping statute, West Virginia Code § 61-2-14a, alleging it is overly broad, vague, and allows the trial court to make findings of fact that may enhance the sentence from a term of years to a life sentence. Petitioner essentially relies on the dissenting opinion in his direct appeal. The majority opinion of *Slater* does not directly address the dissent. However, Justice Benjamin's concurring opinion does:

> According to the dissent, the majority opinion is inconsistent with the United States Supreme Court's rulings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). This simply is not true. As this Court explained in *State v. Haught*, 218 W.Va. 462, 624 S.E.2d 899 (2005), *Apprendi* and *Blakely* stand for the principle that any fact other than a prior conviction that increases the penalty for a crime beyond the statutory maximum must be

submitted to a jury and proved beyond a reasonable doubt. In contrast, our kidnaping statute does not provide for the *enhancement* of a defendant's sentence beyond the statutory maximum based on additional facts found by the trial judge, but rather provides for the possible *reduction* of a defendant's sentence based on the trial judge's additional findings. Because *Apprendi* and *Blakely* are not applicable to the instant facts, those cases were properly omitted from the discussion in the majority opinion.

*Slater*, 222 W.Va. at 511, 665 S.E.2d at 686 (Benjamin, J., concurring).

Similarly, the circuit court found that West Virginia Code § 61-2-14a does not provide for the enhancement of a defendant's sentence beyond the statutory maximum based on additional facts found by the trial judge in violation of the constitutional right to a trial by jury. The circuit court noted that the maximum sentence that petitioner could receive for the kidnaping conviction, based upon the jury's finding, was life with mercy, which is the sentence he received. We agree and find no reversible error.

Petitioner's second assignment of error challenges the trial court's instruction to the jury that

[i]t is reasonable to infer that a person ordinarily intends to do that which he does or which is the natural or probable consequence of his knowing acts. The jury may draw the inference that a person intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the State has proved beyond a reasonable doubt the required criminal intent.

Petitioner argues that this instruction violates the United States Supreme Court case of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and this Court's holding in *State v. O'Connell*, 163 W.Va. 366, 256 S.E.2d 429 (1979), by shifting the burden of proof on the element of intent. The circuit court rejected this argument and found that the jury instruction was proper because it was neither couched in mandatory terms, nor shifted the burden of proof to petitioner, relying on a similar instruction in *United States v. Arthur*, 544 F.2d 730 (4th Cir. 1976). Our consideration of the entire charge in this case convinces us that it was sufficiently clear to the jury that the burden was at all times upon the State to prove petitioner's intent beyond a reasonable doubt, and never upon him to prove the lack thereof.

The circuit court's order reflects its thorough analysis of the grounds raised in the petition for habeas corpus. Having reviewed the opinion order entered on February 22, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

3

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 27, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

FILED
2012 MAY 22 PM 4: 17
CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT
KH

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOSHUA SLATER
   Petitioner,

v.

          Case No. 09-MISC-120
          Writ No. 11-1714
          Judge Carrie L. Webster


JIM RUBENSTEIN, Commissioner
WEST VIRGINIA DIVISION OF CORRECTIONS,
DAVID BALLARD, Warden,
MOUNT OLIVE CORRECTIONAL CENTER,
   Respondents.


## ORDER DENYING PETITIONER'S PETITION
## FOR WRIT OF HABEAS CORPUS


On a former day came the Petitioner, Joshua Slater, by counsel, Matthew Victor, Esquire, and presented his Amended Petition for Writ of Habeas Corpus and brief in support thereof. The Respondent, by counsel, K. Michele Drummond, Assistant Prosecuting Attorney in and for Kanawha County, timely presented a Reply to the Petition for Writ of Habeas Corpus. The Court also held an evidentiary hearing in this matter. After a thorough review of the petition, the Respondent's reply, exhibits, underlying records, including but not limited to the trial transcript, other documentary evidence and applicable case law, the Court finds the matter ripe for a decision and makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. At all times relevant, Joshua Slater, the Petitioner herein, and Angela Walls ("victim" or "Walls"), resided together with their two children at 1701 Pine Valley, Lot #8, Sissonville, West Virginia.[1] On November 29, 2005, Walls was awakened by Slater, who demanded to know if she had taken money from him. An argument ensued between the two concerning the money. Walls decided that she was going to leave. She packed her children's belongings and carried them to the car. She returned to the trailer to get her children, and she began to exit the trailer, Slater told her that he could not let her leave. The following exchange occurred in the living room of the trailer:

> Walls: What do you mean you can't let me leave?"
>
> Slater: "Get in here and shut the door." She said
>
> Walls: "Josh, I'm leaving."
>
> Slater: "No, you're not leaving. One of the kids has to stay here."
>
> Walls: "No, the kids go with me."
>
> Slater: "No, one of them has to stay here."
>
> Walls: "No, both of the kids are going with me."

2. Slater got up and struck Walls in the leg with a hammer, and then punched the side of her [the victim] head. Walls again told Slater that she was leaving.

3. Slater then grabbed the gun and pointed it directly at Walls, telling her that she was not leaving and that she was not allowed to go anywhere. Slater continually threatened to kill her. Walls testified at trial that the gun was loaded.

---

[1] The Court's findings of fact incorporate evidence established at the trial of the petitioner, and further reflect relevant procedural and substantive background of record

4.      Walls pleaded with Slater not to shoot her in front of the kids. Slater then pointed the gun and told her to get into the bedroom. She did as Slater ordered and walked to the bedroom. Slater followed her to the bedroom, pointing the gun at her the entire time.

5.      Prior to being ordered to the bedroom, Walls attempted to grab the phone, which was located on the coffee table, for the purpose of calling her mother. Slater, who was in the kitchen, grabbed the phone and broke it. Slater shut the bedroom door, and Walls sat on the bed. Slater pointed the gun at her as they argued. Walls was crying and begging Slater to stop. In response to her pleas, Slater cocked the gun. Walls screamed, begging him not to shoot her, and reminding him that everyone would know that he had been the one who killed her.

6.      Slater then put the gun down. He told Walls to dress in a camouflage shirt and camouflage pants, and made her pull her hair up on top of her head and put a toboggan on. Slater told Walls that she had fourteen hours to live. Slater explained that he was going to take their children to his aunt's house when it got dark; that that the two of them would then "go hunting," and that she [Walls] would "accidentally" be shot because she was not wearing orange. Slater told Walls that he would shoot her with a .20 gauge shotgun that belonged to a friend and would not be linked to him.

7.      Alternatively, Slater said he would tie Walls to a tree and shoot her in both legs so that she would suffer, and that he would knock out her teeth so that there would not be any dental records   Slater said he would burn her alive so no one could find her body. Slater told Walls to bring the clothing she had placed in the vehicle back inside and put them up so that suspicions would not be aroused later. Walls brought the clothing

inside and began putting them away. She opened the bedroom window and covered the open window with the curtain. She walked into the living room to get another bag of clothing and saw the keys lying on the living room floor. She grabbed the keys and placed them in her pocket. She returned to the bedroom and pretended to be putting the clothing away. She threw diapers, milk and clothing for herself and the two children out of the open window. She returned to the living room where Slater was cleaning his gun and wiping fingerprints from the gun and bullets. He was wearing gloves.

8. Walls told Slater that if she only had fourteen hours to live that she was going to spend some time with their little girl. She gathered the little girl from her bed and took her to their bedroom. She peeked around the door and saw that Slater was still cleaning his gun. She grabbed both children and jumped out of the window. She went to her parents' home because Slater told her that he would kill her family. Walls and her mother then went to her grandmother's home in Clearview Heights. Approximately three hours had passed since Slater had awakened her earlier that morning.

9. Slater went to Walls' mother's house, where he attempted to open the door to the home with a key but was unable to do so. He then broke the window in the back door. Deputy A.C. Kessell arrived at approximately 11 o'clock a.m. Kessell walked onto the porch and approached the side door, where he observed broken glass on the porch and a broken window in the door. Kessell began to enter the residence through the door when she heard a noise to her left. Kessell saw a white male with brown hair dressed in a camouflage jacket and pants exit through a sliding glass door, jump over the deck railing and flee down a steep hillside. Kessell ran to the edge of the residence and saw the suspect run down the hill and across several lawns before she lost sight of him.

10. During a search of the trailer, Kessell and Deputy Mathis located a Marlin 30-30 rifle in the master bedroom with what appeared to be glass on the tip of its barrel. The rifle also appeared to have mud on it. Kessell and Mathis located five Winchester 30-30 cartridges on the bed in the master bedroom. Slater was subsequently apprehended and charged with multiple criminal offenses.

11. Following his criminal trial, Slater was convicted of kidnapping, wanton endangerment, daytime burglary by breaking and entering and domestic battery. The Court sentenced Slater to life with mercy for the kidnapping, a determinate term of five years on the wanton endangerment, an indeterminate term of not less than one nor more than fifteen years on the daytime burglary, and a determinate term of one year on the domestic battery.

12. Slater then subsequently filed a Petition for Appeal with the West Virginia Supreme Court of Appeals. The State Supreme Court accepted the Petition and affirmed his convictions on a 4-1 vote.

13. Slater filed a Petition for Writ of Habeas Corpus with this Court, which was amended and perfected by his court-appointed counsel. Slater alleged the following grounds for relief: (1) ineffective assistance of counsel; (2) the unconstitutionality of W.Va. Code 61-2-14a (1999); (3) the unconstitutionality of the "reasonable doubt" jury instruction, due to alleged burden shifting; (4) the unconstitutionality of the "reasonable doubt" jury instruction, based upon the improper definition provided; (5) the unconstitutionality of the instruction regarding direct and circumstantial evidence; (6) the State's self-introduction as a representative of "the people of Kanawha County;" (7) the State's treatment of the victim as a hostile witness; and (8) the Court's finding that

Slater's custodial statement was knowingly, intelligently and voluntarily waived, and the admission of Slater's custodial statement as a result of said finding.

## CONCLUSIONS OF LAW

14. West Virginia's post-conviction habeas corpus proceedings afford a petitioner with an opportunity to "raise any collateral issues which have not previously been fully and fairly litigated." State ex rel. Markley v. Coleman, 215 W. Va. 729, 732, 601 S.E.2d 49, 52 (2004); Losh, supra. At the omnibus habeas corpus hearing, a petitioner is required to raise all grounds known or that reasonably could be known by him. Markley, infra.

15. The West Virginia Supreme Court of Appeals has stated that "[o]ur post conviction habeas corpus statute . . . clearly contemplates that a person who has been convicted of a crime is ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. pt. 1, Gibson v. Dale, 173 W. Va. 681, 319 S.E.2d 806 (1984). The initial habeas corpus hearing is res judicata as to all matters raised and to all matters known or which with reasonable diligence could have been known. Syl. pt. 4, Losh, supra. Therefore, only ineffective assistance of habeas counsel, newly discovered evidence, or a change in law favorable to the applicant and which may be applied retroactively can be considered in any subsequent habeas petition. Id.

16. A petitioner is entitled to careful consideration of his claims Markley, supra. Such consideration is mandated in order to assure that no violation or petitioner's due process rights could have escaped the attention of either the trial court or the State Supreme Court. Id. Circuit courts denying or granting relief in a habeas corpus case are

statutorily required to make specific findings of fact and conclusions of law relating to each contention advanced by a petitioner, and to state the grounds upon which the matter was determined. Id. The State Supreme Court has held that where a petitioner fails to provide adequate factual support for his allegations and makes nothing more than mere blanket assertions without the appropriate factual basis, the claims must be denied. Id.

17. Pursuant to W.Va. Code §53-4A-7 (1931), the circuit court shall enter an order denying relief if, based upon the petition, affidavits, exhibits, records and other documentary evidence, the petitioner fails to meet a probable cause standard, or if the grounds in the petition have previously been adjudicated or waived.

18. In West Virginia, ineffective assistance of counsel claims are to be governed by the two pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See State v. Miller, 194 W. Va. 3, 459 S.E.2d 114 (1995); State ex rel. Quinones v. Rubenstein, 218 W. Va. 388, 624 S.E.2d 825 (2005); State ex rel. Wensell v. Trent, 218 W. Va. 529, 625 S.E.2d 291 (2005). A court must first determine if counsel's performance was deficient under an objective standard of reasonableness. See Miller, Rubenstein, and Wensell, infra. A court must also determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id.

19. The State Supreme Court has long held that:

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, Miller; Syl. pt. 4, Rubenstein; Syl. pt. 3, Wensell.

20. The State Supreme Court has also stated that when presented with an ineffective assistance of counsel claim, a circuit court should always presume strongly that the attorney's performance was reasonable and adequate. Syl. pt. 6, Miller; State v. Chapman, 210 W. Va. 292, 557 S.E.2d 346 (2001). The Court further recognized that a petitioner who seeks to rebut such a strong presumption bears a difficult burden. Id. In fact, the presumption can only be rebutted "by clear record evidence that the strategy adopted by counsel was unreasonable. Coleman v. Painter, 215 W. Va. 592, 596, 600 S.E.2d 304, 308 (2004).

21. In the instant case, the Respondent denies error with regard to incompetent counsel and other claims asserted by Petitioner Slater.

22. Slater asserts that his counsel failed to call several important witnesses and failed to cross-examine the victim regarding information provided by those witnesses. Specifically, Slater asserts that counsel failed to call Barbara Slater, Petitioner's mother, who would have testified that the victim told her that Slater was a loving father, that the victim loved Slater, and that the victim did not wish to pursue the charges. Any statements allegedly made by the victim to Barbara Slater would have been inadmissible hearsay. Further, the Respondent points out that the same testimony was elicited from the victim at trial.

Slater asserts that his counsel failed to call Lenny Harvey, who would have testified that the victim and Slater were using and selling drugs, and Jimmy Rhoades, who would have testified that the victim and Slater were obtaining drugs by fraudulent prescriptions. It appears from the trial and habeas record, that Slater's trial counsel made a strategic decision not to offer the same as it would have not assisted Slater in defending

the charges but would have hindered his defense. Slater asserts that his trial counsel failed to call Curtis Hanshaw and Adam Slater, who would have testified that Slater had planned to hunt on the day in question. As the trial record reflects, the same was elicited from the victim at trial. Further, it appears that Slater's trial counsel made a strategic decision not to offer the same as it would have not assisted Slater in defending the charges but would have hindered his defense. The Court also notes that the testimony of these witnesses could have opened the door or led to the admissibility of other evidence that was prejudicial to Slater. Thus, in accordance with the precedent established in Miller, Chapman, and Marley, infra, this Court finds that the Petitioner has failed to sufficiently rebut the strong presumption that trial counsel's strategic decisions and performance were reasonable.

23.     The trial record reflects that most if not all of the evidence that the Petitioner wished to introduce through these witnesses was offered into evidence by the actual victim, whose testimony actually corroborated much of what Slater wanted to elicit from the other witnesses. Accordingly, based on the above, and for other reasons apparent in the record, the Court concludes that no credible evidence has been presented to demonstrate that Slater was prejudiced in any manner as a result of trial counsel choosing not to call these particular witnesses.

24.     Slater asserts that his trial counsel committed an egregious error when he opened the door for the State of West Virginia to delve into prior bad acts that Slater allegedly committed. During the cross-examination of the victim at the underlying trial, Slater's counsel made inquiry of the victim regarding Slater's treatment of her prior to the

date of the incident at issue. The victim unexpectedly responded that Slater sometimes treated her badly.

At an evidentiary hearing conducted in connection with this underlying petition, Slater's trial counsel testified that he had met with the victim numerous times before Petitioner's criminal trial, and that the victim had never once voiced anything negative concerning Slater's treatment of her. Based on these meetings and upon information he learned from and about the victim during these conversations, trial counsel did not have any reasonable basis to believe that his question to the victim would elicit such a response. Thus, when considering whether a reasonable lawyer would have acted similarly or the same as Slater's trial counsel did under these particular facts and totality of the circumstances presented, this Court cannot find that a reasonable lawyer would have acted otherwise.

Further, based upon the substance of the testimony that was elicited from the victim in response to questions from Slater's counsel and from the State, this Court concludes that reasonable probability does not exist, that but for the conduct of trial counsel, whose questioning elicited from the victim a response that arguably cast Slater in a negative light and opened the door to other limited questioning from the State, that the verdict of the jury would have been different. Slater's conduct and the criminal acts that he was accused of committing were egregious in nature, separate and apart from the victim's brief testimony of prior physical contact between the two. Further, as the Respondent points out in its reply, the victim, when questioned by the State regarding Slater's past "bad behavior," essentially described same as arguing and fighting.

25.     Slater alleges his trial counsel was ineffective because he met with the victim and her family without his knowledge or approval. The Court notes that the State disclosed the victim and her family as witnesses for the State prior to trial. Thus, Slater and his counsel could reasonably anticipate that both the victim and her parents would be called as witnesses and would testify against Slater at his trial. In fact, the victim and her mother both testified at Slater's criminal trial.

Based on the above facts and other evidence in the record, the Court finds that Slater's trial counsel was placed in a "catch-22" position. First, assuming *argumento*, that Slater's trial counsel did not advise and/or obtain permission from his client prior to meeting with the victim and her family, it does not change the important fact that the State intended to call the victim and her parents as witnesses during Slater's trial, presumably to offer testimony which was favorable to the State's case and unfavorable to Slater. A criminal trial attorney is under a duty to make reasonable inquiry to ascertain the substance of any witness' anticipated testimony. Notably, if Slater's trial counsel had failed to meet with the victim and her family, particularly in light of their willingness to do so, Slater would still likely be asserting an ineffective assistance of counsel claim, based on trial counsel's failure to do so. Thus, the Court finds that trial counsel's decision to meet with the victim and her parents does not constitute ineffective counsel, even if he did not notify Slater and obtain prior approval. The Court therefore concludes that Slater has failed to demonstrate any resulting prejudice suffered as a result of these acts, even if said acts would have been found by this court to be improper.

26.   Slater asserts that his trial counsel failed to object to three errors he alleges were committed by the Court and the State during the underlying trial.[2] Based upon the record, the Court finds that any failure of trial counsel to object was not prejudicial to the Petitioner, and hereby concludes that any such error was harmless and did not have an adverse impact on the jury's verdict.

27.   Slater asserts that W.Va. Code 61-2-14a (1999), otherwise referred to as the 'kidnapping statute," is unconstitutional in that it violates the precedent established by the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, _____ S.Ct. _____, _____ L.Ed.2d _____(2004).

In Apprendi v. New Jersey, infra, the relevant facts centered on the trial court's sentencing of a defendant who was charged under New Jersey law with second-degree possession of a firearm for an unlawful purpose, which carried a prison term of 5 to 10 years. After the defendant pleaded guilty, the prosecutor filed a motion to enhance the sentence pursuant to a separate state hate crime statute. The statute allowed the defendant's sentence to be extended if the court found, by a preponderance of the evidence, that " '[t]he [defendant] Petitioner in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'"

The trial court found that the shooting was racially motivated and sentenced the defendant to a 12 year term, which was two years more than the maximum sentence provided in the statute under which Slater was convicted. On appeal, the United States Supreme Court reversed the New Jersey Supreme Court's decision, concluding that

---

[2] The specific errors are set forth in Petitioner's amended petition and in paragraph 12 of this Order.

""[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." See State v. Rutherford, 672 S.E.2d 137 (W.Va. 2008) quoting Apprendi, 530 U.S. at 490 (citations omitted) (emphasis added). In the instant case, W.Va. Code § 60A-4-408 requires only the finding of the fact of a prior conviction in order to enhance a defendant's sentence.

In the case of Blakely v Washington, infra, the defendant pled guilty to second-degree kidnapping. Under the State of Washington's sentencing statute, the facts that the defendant admitted qualified him for a standard sentence of 53 months. However, pursuant to the statute, the trial court could increase the defendant's sentence if it found "'substantial and compelling reasons justifying an exceptional sentence.'" The court increased Blakely's sentence to ninety (90) months after it found facts supporting deliberate cruelty, a statutorily enumerated ground for departure.

The United States Supreme Court reversed after finding that the Washington trial court's sentencing of the defendant to more than three years above the 53-month statutory maximum of the standard range for his offense, violated the defendant's Sixth Amendment right to trial by jury, based on the trial judge's finding that the defendant acted with deliberate cruelty. In reaching this decision, the Court reiterated its finding in Apprendi, that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Accord Apprendi, infra.

The West Virginia Supreme Court of Appeals in State v. Haught, 218 W.Va. 462, 624 S.E.2d 899 (2005) held, in Syllabus 2, that "[o]ur kidnaping statute, W.Va. Code §

61-2-14a (1999), does not provide for the enhancement of a defendant's sentence beyond the statutory maximum based on additional facts found by the trial judge in violation of the constitutional right to a trial by jury as interpreted by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)."

In the present case, the maximum sentence that Slater could receive for his Kidnapping conviction, based upon the jury's findings, was life with mercy, which is the sentence that Slater received from the Court on this offense. Thus, Slater received no greater sentence than the statutory maximum. The additional sentences imposed by the Court were for other offenses he was convicted of by this same jury.

28. Slater asserts that the W.Va. Code 61-2-14a(a) is unconstitutionally overbroad in that during the commission of any crime committed against a person under this statute, a criminal defendant can potentially (pursuant to the "wording" of the statute) "... take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person ..." and be found guilty or convicted of the criminal offense of kidnapping.

The State Supreme Court has repeatedly stressed the importance of our separation of powers doctrine, and the great deference to which the state legislature is entitled in the interpretation and construction of a statute. See State v. Haught, infra (a court "afford(s) to a statute every reasonable construction in order to sustain its constitutionality."):

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question.

Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt. Id. quoting Syllabus Point 1, State ex rel. Appalachian Power Co. v. Gainer, 149 W.Va. 740, 143 S.E.2d 351 (1965).

Based on the plain words of the statute and the applicable case law governing the interpretation and construction of a statute, this Court finds that the instant statute is not over-broad in that it _further_ requires that such action must have been taken "... for the purpose, or with the intent, of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing..." See W.Va. Code 61-2-14a(a).

29. Slater asserts that W.Va. 61-2-14a(a) is unconstitutionally vague in that the statute does not define "advantage" and "concession." Slater further asserts that the statute refers to "any" concession, and that the "concession" could be a 'lawful' one as well as an 'unlawful' one. The West Virginia Supreme Court of Appeals has repeatedly held that the plain language of a statute should be afforded its plain meaning, and that the rules of interpretation are resorted to for the purpose of resolving an ambiguity and not for the purpose of creating one. Based upon a close reading of the statute and its relevant provisions, the Court finds it could not be the intention of the legislature to punish the granting or receiving of a 'lawful' advantage and/or a 'lawful' concession. Accordingly, this Court finds that the plain language of the words "advantage" and "concession," as set forth in the statute, should be afforded their plain meaning, and therefore must be construed to mean "unlawful" advantage and "unlawful" concession.

30.    Slater challenges the Court's instruction to the jury that:

It is reasonable to infer that a person ordinarily intends to do that which he does or which is the natural or probable consequence of his knowing acts. The jury may draw the inference that a person intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonable have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the State had proved beyond a reasonable doubt the required criminal intent.

The West Virginia Supreme Court of Appeals in State v. Pendry, 159 W.Va. 738, 227 S.E.2d 210 (1976) determined that a holding by the United States Supreme Court in Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) stood for the following propositions:

1. In a criminal case, the State is required to carry the burden of proving beyond a reasonable doubt every material element of the crime with which Slater is charged;

2. In carrying its burden of proof beyond a reasonable doubt, the State is not entitled to an instruction which requires a jury to accept as proved beyond a reasonable doubt any element of the criminal offense charged, and this concept embraces presumptions (more properly inferences) as to which the jury may be instructed; and

3. A Petitioner in a criminal case cannot be required to present evidence either in terms of going forward with the evidence or in terms of bearing the burden of persuasion in connection with any material element of the crime charged.

Of primary importance is the fact that Pendry does not condemn the use of inferences, but only the use of language giving conclusive presumptions to certain facts which are essential to proof of the criminal charge. A jury may permissibly determine from all the facts and circumstances that a person intended to do that which he did.

The Fourth Circuit in U. S. v. Arthur, 544 F.2d 730 (4th Cir. 1976) approved the following instruction:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission. Any such inference drawn is entitled to be considered by the jury in determining whether or not the government has proved beyond a reasonable doubt that Slater possessed the required criminal intent.

Habeas counsel argues that the instruction in the present case runs afoul of the holding by the United States Supreme Court in Sandstrom v. Montana, 442 U.S. 510 (1979). In Sandstrom, the trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts."

The Court finds that the jury instruction in the present case was proper since, like the one in Arthur, it was neither couched in mandatory terms, nor shifted the burden of proof to Slater. Further, the instructions must be considered as a whole, and the instructions clearly showed the burden was on the State to prove intent. The jury was permitted, but not required, to find from the evidence Slater's intent, and the jury was properly and adequately advised of the State's duty to prove intent beyond a reasonable doubt.

31. Slater challenges the Court's instruction on reasonable doubt. The Court instructed the jury that:

> The law presumes a Petitioner to be innocent of crime. Thus a Petitioner, although accused, begins the trial with a "clean slate" with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a Petitioner, unless the jurors are satisfied beyond a reasonable doubt of Slater's guilt after careful and impartial consideration of all the evidence in the case....

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense-the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it.

The jury will remember that a Petitioner is never to be convicted on mere suspicion or conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a Petitioner; for the law never imposes upon a Petitioner in a criminal case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a Petitioner is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions-one of innocence, the other of guilt-the jury should of course adopt the conclusion of innocence.

The West Virginia State Supreme Court of Appeals in State v. Goff, 166 W.Va. 47, 272 S.E.2d 457 (1980) offered a standard instruction on the presumption of innocence and burden of proof. The standard instruction is identical to that offered by the Court in the present case.

Slater argues that the instruction in the present case runs afoul of the United States Supreme Court's holding in Victor v. Nebraska, 511 U.S. 1 (1994); the Fourth Circuit Court of Appeals holding in United States v. Love, 767 F.2d 1052 (4th Cir. 1985); and the West Virginia Supreme Court of Appeals holding in State v. Ashcraft, 172 W.Va. 640, 309 S.E.2d 600 (1983).

In Ashcraft, the West Virginia Supreme Court of Appeals discouraged the use of instructions which attempt to define reasonable doubt beyond the standard charge. See Ashcraft, infra.

In Love, the Petitioner contended that the trial court's charge relating to the definition of reasonable doubt constituted plain error necessitating a reversal of their convictions. Specifically, the Petitioner objected to that part of the trial court's charge instructing that reasonable doubt exists in any case when after a careful and impartial consideration of all the evidence, you the jury do not feel convinced to a reasonable moral certainty that a Petitioner is guilty of the charges. In addition, the Petitioner challenged the instruction that proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the more important affairs of your own life. Although the Fourth Circuit Court of Appeals noted that it has repeatedly joined in the general condemnation of trial court attempts to define reasonable doubt in their jury instructions, it was satisfied that the instructions were not plain error which would require reversal of the appellants' convictions. See Love, infra.

In Victor, the United States Supreme Court held that the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. It was noted that as long as the court instructs the jury on the necessity that Slater's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. According to Victor, the constitutional question is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the standard of beyond a reasonable doubt. See Victor, infra.

Thus, based on the above analysis, the Court finds that the jury instruction in the present case was a standard instruction and was in no way misleading or confusing; and, viewed in the context of the charge as a whole, correctly conveyed the concept of reasonable doubt.

32.    Slater argues that the instruction in the present case involving 'circumstantial evidence' runs afoul of the holding by the Fourth Circuit Court of Appeals in United States v. Gray, 137 F.3d 765 (4th Cir. 1998) and the West Virginia Supreme Court of Appeals in State v. Guthrie, 194 W.Va. 657, 461 S.E.2d 163 (1995).

In Gray, the United State Supreme Court held that circumstantial evidence is treated no differently than direct evidence and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence.

In Guthrie, the West Virginia Supreme Court overturned the long established rule that when the State relies upon circumstantial evidence, in whole or in part, for a court to sustain the verdict all other reasonable hypotheses need be excluded by the prosecution save that of guilt. In doing so the West Virginia Supreme Court recognized that circumstantial evidence and direct evidence inherently possess the same probative value and are indistinguishable so far as the jury's fact-finding function is concerned. All that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.

This particular instruction simply defined "direct" evidence and "circumstantial" evidence. The instruction clearly advised the jury that the law accepts both to establish the guilt (or innocence) of the defendant, and that further, in some cases, circumstantial

evidence is the only source of proof. Importantly, it did not incorporate the language excised by the Supreme Court in Gray and Guthrie. Thus, this Court finds that when read as a whole, the jury instruction was proper and comported with the applicable law. The instruction did not differentiate between direct and circumstantial evidence and recognized that there should be only one standard of proof in criminal cases, that of proof beyond a reasonable doubt.

33.     Slater asserts that the trial court erred in allowing the State to treat the victim as a hostile witness. Rule 611(c) of the West Virginia Rules of Evidence provides, in pertinent part, "[w]hen a party calls a hostile witness, an adverse party, a witness identified with an adverse party, or an expert witness, interrogation may be by leading questions." This rule is substantively identical to Rule 611(c) of the Fed.Rules of Evid., so that materials pertaining to the federal rule are persuasive authority in construing our own W.Va.Rule of Evid. 611(c).

First, the Court notes that the operative term in Rule 611(c) is not "hostility." Rule 611(c) does not require that the witness be "hostile." Thus, if the witness is adverse to the party, or is identified with an adverse party, then the witness may be examined by leading questions. The Fourth Circuit, in United States v. Hicks, 748 F.2d 854 (4th Cir.1984), addressed a related situation, holding that the trial court did not abuse its discretion in allowing the government to use two leading questions in its direct examination of the girlfriend of one of the defendants. The Court stated, "Clearly [the girlfriend] ( ) was a person 'identified with an adverse party' so that interrogation by leading questions was permissible."

The West Virginia Supreme Court of Appeals, in State v. Perolis, 183 W.Va. 686, 398 S.E.2d 512 (1990), held that when a party calls a hostile witness, an adverse witness, or a witness identified with an adverse party, interrogation may be by leading questions. In the instant case, the victim was the wife of the Petitioner at the time the incident occurred, and also offered testimony during his trial that not only cast him in a negative light, but was also apparently inconsistent with information she disclosed to Petitioner's attorney prior to trial.

34.    Slater contends that the trial court erred when it failed to suppress the statement he made to the investigating deputy. Slater claims to have been so under the influence of controlled substances at the time the statement was made that he lacked the capacity to voluntarily, knowingly and intelligently waive his right to self-incrimination.

In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court ruled that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the Petitioner unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Thus, a person accused or charged with a crime may waive his rights relating to self-incrimination, "provided the waiver is made voluntarily, knowingly and intelligently."

The West Virginia Supreme Court of Appeals has held that a Petitioner's claim of intoxication may bear on the voluntary nature of any waiver of rights. However, a statement is not made inadmissible on this basis unless the degree of intoxication is such that Slater lacked the capacity to voluntarily and intelligently waive his rights.

In the present case, the State presented evidence sufficient to show that Slater's statement was freely and intelligently given. There is no contention of police coercion of any kind. No promises, threats or force was used during the interview. Deputy Hylton adequately explained Slater's rights, and testified that he felt Slater understood his rights at the time the waiver of rights form was executed. Slater signed the form, waived his rights and then gave a written statement. At no time did Slater request that the interview be halted.

Upon review of the facts and evidence presented, and considering same in light of the great deference afforded trial judges in making such rulings, the Court finds that the custodial statement given by Slater was freely and intelligently given, notwithstanding his consumption of alcoholic beverages, which this Court further finds that such evidence did not exist to sufficiently demonstrate or prove that the Petitioner lacked capacity to voluntarily and intelligently waive his rights. Based upon the evidence presented, the Court finds and concludes that such ruling does not constitute reversible error.

## RULING

Based upon the foregoing, the Court **DENIES** the instant Habeas Petition, as amended, and **ORDERS** the matter be stricken from the docket.

The Court further notes Slater's objection and exception to its ruling, and preserves same for purposes of any appeal to the provisions contained herein.

It is further **ORDERED** that the Clerk send certified copies of this Order to counsel of record and to the Petitioner, at Mount Olive Correctional Center.[3]

---

[3] The Court notes that the Proposed Order submitted by Respondent's counsel at the court's request, was modified by the court before entry.

ENTERED THIS 22ⁿᵈ day of _____February_____, 2012

_____,

**CARRIE L. WEBSTER, JUDGE**
**Thirteenth Judicial Circuit**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON, CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS
DAY OF

CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA     CLERK