# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Joshua Lee Slater,**
**Petitioner Below, Petitioner**

**vs)   No. 17-0491** (Kanawha County 14-P-130 & 16-P-150)

**Michael Martin, Warden,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

**FILED**

**June 29, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Joshua Lee Slater, pro se, appeals the April 17, 2017, order of the Circuit Court of Kanawha County denying his second and third petitions for writ of habeas corpus. Respondent Michael Martin, Warden, Huttonsville Correctional Center, by counsel Sarah B. Massey, filed a response in support of the circuit court's order.[1] Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In *State v. Slater* ("*Slater I*"), 222 W.Va. 499, 502-03, 665 S.E.2d 674, 677-78 (2008), this Court set forth the underlying facts of this case:

> [Petitioner] lived with his long-time girlfriend, Angela Walls, and their two small children in a trailer in Sissonville[, West Virginia]. On November 29, 2005, [petitioner] and Ms. Walls got into an argument. At some point, [petitioner] hit Ms. Walls on the side of her head and threw a hammer, hitting her in the leg and causing minor bruising.
> When Ms. Walls indicated that she was taking the children to her mother's house, [petitioner] ordered her to stay at gunpoint. He also threatened to kill Ms.

---

[1] Although Ms. Massey filed a response on respondent's behalf, Ms. Massey no longer represents respondent in this matter. Respondent is now represented by Deputy Attorney General Robert L. Hogan.

1

Walls' entire family. [Petitioner] then ordered Ms. Walls into the bedroom where he pointed a twelve-gauge shotgun at her and threatened to shoot her. While they were in the bedroom, [petitioner] ordered Ms. Walls to change into camouflage clothing. After she did so, he informed her that she had 14 hours to live, and then he was going to take her into the woods, tie her to a tree, "buckshot" her in both her knees, knock her teeth out so there would be no dental records, and set her body on fire so she could not be found. Shortly thereafter, Ms. Walls and the children escaped through the bedroom window, and Ms. Walls drove to her mother's house.

Subsequently, [petitioner] went to Ms. Walls' mother's house. By that time, Ms. Walls, her mother Lori Walls, and the children had fled to Ms. Walls' grandmother's house. [Petitioner] attempted to open the door to the Walls' house with a key[,] but was unable to do so. He then broke the window in the back door with the barrel of a gun and kicked in the back door. A short time later, a police officer arrived at the Walls' house. Although [petitioner] fled the house, he was arrested later that day.

[Petitioner] was found guilty by a jury of kidnaping, for which he was sentenced to life with mercy; domestic battery, for which he received a determinate term of one year; wanton endangerment, for which he was sentenced to a determinate term of five years; and daytime burglary by breaking and entering, for which the trial court sentenced him to an indeterminate term of not less than one nor more than fifteen years. These sentences are to run consecutively.

In appealing his various convictions and sentences in *Slater I*, petitioner raised the following assignments of error: (1) sufficiency of evidence to support his burglary conviction; (2) sufficiency of the evidence to support his kidnaping conviction; (3) constitutionality of his aggregate sentence; (4) alleged instructional error regarding the law of wanton endangerment; and (5) alleged instruction error regarding jury inferences. *Id.* at 503-10, 665 S.E.2d at 678-85. This Court rejected petitioner's arguments and affirmed his convictions and sentences. *Id.*

Subsequently, in an initial habeas corpus proceeding where petitioner alleged ineffective assistance of trial counsel, an omnibus hearing was held on July 9, 2010, and April 4, 2011. At the July 9, 2010, hearing, petitioner's habeas attorney presented the testimony of petitioner, his mother, and his aunt. Respondent presented the testimony of petitioner's trial attorney at the April 4, 2011, hearing. By order entered February 22, 2012, the circuit court denied petitioner's habeas petition, finding, inter alia, that petitioner's trial attorney was not ineffective. In *State v. Slater* ("*Slater II*"), No. 12-0330, 2013 WL 5418574, at *2-3 (W.Va. September 27, 2013) (memorandum decision), petitioner's habeas appellate attorney challenged the constitutionality of the kidnaping statute, West Virginia Code § 61-2-14a, and the jury instruction regarding inferences. This Court rejected petitioner's arguments and affirmed the circuit court's denial of habeas relief. *Id.*

On March 11, 2014, and March 31, 2016, petitioner filed his second and third habeas petitions, alleging that his habeas attorney and his habeas appellate attorney provided ineffective

assistance. By order entered April 17, 2017, the circuit court found that no need existed for a hearing or appointment of counsel and denied habeas relief.

On May 26, 2017, petitioner appealed the circuit court's April 17, 2017, order denying his second and third habeas petitions and, on June 26, 2017, filed a motion for appointment of appellate counsel. By order entered June 30, 2017, this Court ruled that "petitioner's motion for appointment of counsel will be considered with the merits[.]"

We apply the following standard of review in habeas appeals:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, of *Anstey v. Ballard*, 237 W.Va. 411, 787 S.E.2d 864 (2016). In syllabus points five and six of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we held:

> 5.     In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.[2]

> 6.     In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

On appeal, petitioner argues that the circuit court erred in denying habeas relief without holding a hearing and appointing counsel on his claims that his habeas attorney and his habeas appellate attorney provided ineffective assistance. Respondent counters that the circuit court's denial of habeas relief should be affirmed. We agree with respondent.

---

[2]The second prong of the *Strickland/Miller* standard is often referred to as the prejudice prong. *See State v. Hutton*, 235 W.Va. 724, 739, 776 S.E.2d 621, 636 (2015).

For the reasons stated by the circuit court in its order, we concur with its findings that petitioner's ineffective assistance claims were largely based on issues either raised in his first habeas proceeding or should have been raised with reasonable diligence and, to the extent that the claims were not barred by the doctrine of res judicata,[3] they were matters of strategy rather than deficient performance.

Furthermore, we agree with respondent's position that, even if habeas counsel and habeas appellate counsel were deficient in some way, petitioner did not suffer any prejudice. In *Slater I*, we rejected petitioner's challenges to his kidnaping and burglary convictions, finding that there was sufficient evidence that he committed those offenses. 222 W.Va. at 505-06, 665 S.E.2d at 680-81. In *Slater II*, we affirmed the denial of habeas relief in the first such proceeding—including the ruling that petitioner's trial attorney was not ineffective—finding that his criminal conduct had been "egregious." 2013 WL 5418574, at *8; *see also Slater I*, 222 W.Va. at 510, 665 S.E.2d at 685 (Starcher, J., dissenting) (stating that "[t]he facts of this case alone are such that it gives one pause to dissent to the majority opinion"). Finally, we find that petitioner both disputes the accuracy of the trial transcript despite the court reporter's certificate that it is "a true and correct transcript" of the underlying criminal proceedings and also makes allegations that are contrary to previously made findings.[4] Accordingly, based on our review of the record, we find that any alleged deficient performance on the part of habeas counsel or habeas appellate counsel did not change the result of the previous proceeding and appeal.

We find that the circuit court properly determined that no need existed for a hearing or appointment of counsel before it denied habeas relief. As we held in syllabus point 3 of *Anstey*:

> "'A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is

---

[3]In syllabus point four of *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), we held:

> A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing[.]

[4]We give two examples of petitioner making allegations that are contrary to previously made findings. Petitioner states that he did not hit his girlfriend with a hammer and cause a bruise on her leg. However, petitioner acknowledged in *Slater I* that he caused "minor bruises to [the victim's] face and leg." 222 W.Va. at 507, 665 S.E.2d at 682. Petitioner further alleges that law enforcement officers tampered with the evidence at the scene, including a phone, but, in *Slater II*, we found that petitioner "grabbed the phone and broke it." 2013 WL 5418574, at *4.

entitled to no relief. Syllabus Point 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).' Syl. Pt. 2, *White v. Haines*, 215 W.Va. 698, 601 S.E.2d 18 (2004)."

237 W.Va. at 412, 787 S.E.2d at 866.

Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's second and third habeas petitions. Because we find no error in the circuit court's order, we deny petitioner's motion for appointment of appellate counsel. Having reviewed the April 17, 2017, "Final Order Denying Petitions for Writ of Habeas Corpus," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all of the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**:   June 29, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating.

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

JOSHUA LEE SLATER,
Petitioner,

v.

WV Supreme Court No. 17-0183
Civil Case Nos. 14-P-130, 16-P-150
Criminal Case No. 06-F-141
Judge Carrie Webster

MARVIN C. PLUMLEY, WARDEN,
HUTTONSVILLE CORRECTIONAL CENTER,
Respondent.

## FINAL ORDER DENYING PETITIONS FOR WRIT OF HABEAS CORPUS

Pending before the Court are Petitioner Joshua Lee Slater's, *pro se*, second and third petitions for post-conviction habeas corpus relief filed March 11, 2014 and March 31, 2016, respectively. The Court has carefully considered the petitions, memorandum of law, exhibits, the record from Slater's direct appeal and prior habeas proceeding, as well as all pertinent legal authority. As a result of these deliberations, the Court concludes that Slater's second and third petitions for habeas corpus relief are hereby **DENIED.**

### Factual and Procedural History

Petitioner lived with his long-time girlfriend, Angela Walls, and their two small children in Sissonville, West Virginia. During an argument on November 29, 2005, petitioner hit Ms. Walls on the side of her head and threw a hammer, hitting her in the leg and causing minor bruising. When Ms. Walls indicated that she was taking the children to her mother's house, petitioner ordered her to stay at gunpoint. He also threatened to kill Ms. Walls' entire family.

Petitioner then ordered Ms. Walls into the bedroom where he pointed a twelve-gauge shotgun at her and threatened to shoot her. While they were in the bedroom, he told Ms. Walls to

change into camouflage clothing. After she did so, petitioner informed her that she had fourteen hours to live, and then he was going to take her into the woods, tie her to a tree, "buckshot" her in both her knees, knock her teeth out so there would be no dental records, and set her body on fire so she could not be found. Shortly thereafter, Ms. Walls and the children escaped through the bedroom window, and Ms. Walls drove to her mother's house.

Subsequently, Petitioner went to Ms. Walls' mother's house. By that time, Ms. Walls, her mother Lori Walls, and the children had fled to Ms. Walls' grandmother's house. Petitioner attempted to open the door to the Walls' house with a key but was unable to do so. He then broke the window in the back door with the barrel of a gun and kicked in the back door. A short time later, a police officer arrived at the Walls' house. Although petitioner fled the house, he was arrested later that day.

Petitioner was found guilty by a jury of kidnaping, for which he was sentenced to life with mercy; domestic battery, for which he received a determinate term of one year; wanton endangerment, for which he was sentenced to a determinate term of five years; and daytime burglary by breaking and entering, for which the trial court sentenced him to an indeterminate term of not less than one nor more than fifteen years, with sentences to run consecutively. This Court affirmed petitioner's convictions following his direct appeal in *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008).

On March 7, 2009, Petitioner, *pro se*, filed his initial petition for writ of habeas corpus. On August 20, 2009, through counsel, Petitioner filed an amended petition for writ of habeas corpus. Attached to the amended petition is a "Habeas Corpus Notification Form," which includes, as section six, the *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), list. Petitioner and habeas counsel initialed each item on the *Losh* list that Petitioner raised as a

2

ground for relief, and the list was signed by Petitioner and habeas counsel on July 9, 2009. The *Losh* list contains additional grounds that Petitioner, by counsel, added in hand-writing as additional claims of relief. The "Habeas Corpus Notification Form," advises "[I]f you do not raise a ground for relief in this proceeding you will generally not be able to raise that claim ever again in state court. Immediately above the signature of Petitioner and habeas counsel, the *Losh* list explains, "After consulting with my lawyer, I choose to bring only those grounds I have initialed in Section 6 of this Habeas Corpus Notification Form. I understand that by signing below, I am waiving any other grounds I might have."

The habeas corpus hearing commenced July 9, 2010, at which time Petitioner and three witnesses on his behalf testified. Petitioner and his witnesses testified about their interactions with trial counsel, both pre-trial and during the trial itself. The matter was recessed until April 4, 2011, at which time the parties reconvened and heard testimony from Petitioner's trial counsel, Nathan Hicks, Esq.

At the conclusion of the habeas corpus proceeding, the circuit court required counsel to file supplemental briefs on the issue of ineffective assistance of counsel. On February 22, 2012, the circuit court denied this petition.

Thereafter, Petitioner, by counsel, filed an appeal of the circuit court order denying habeas corpus, and raised two assignments of error on appeal. He challenged the constitutionality of the kidnaping statute, West Virginia Code 61-2-14a., and also challenged the trial court's jury instruction on the basis that it unconstitutionally shifted the burden of proof on the element of intent.

By Memorandum Order entered September 27, 2013, the West Virginia Supreme Court of Appeals affirmed the trial court's opinion order entered February 22, 2012, and adopted and

3

incorporated the circuit court's findings and conclusions as to all the assignments of error raised in the appeal, as well as all of the other issues presented on the *Losh* list.

**Subsequent *Pro Se* Petitions for Writ of Habeas Corpus**

Thereafter, Petitioner, *pro se*, filed two Petitions for Writ of Habeas Corpus. Petition for Writ of Habeas Corpus 14-P-130 alleges ineffective assistance of habeas counsel and habeas appellate counsel,[1] and Petition for Writ of Habeas Corpus 16-P-150 renews and expands upon some of those complaints as well as raising additional claims. For judicial economy, the court will address both petitions in this ruling.

Specifically, Petition for Writ of Habeas Corpus 14-P-130 alleges (1) habeas appellate counsel was ineffective for not consulting with Petitioner before filing the appeal; (2) habeas appellate counsel was ineffective for not providing Petitioner a copy of the habeas transcript; and (3) both habeas counsel and habeas appellate counsel were ineffective for failing to include all issues that were on the *Losh* list in their submissions.

Petition for Writ of Habeas Corpus 16-P-150 alleges eight areas in which habeas counsel was ineffective by failing to raise and/or pursue trial counsel's ineffectiveness in the habeas hearing; three claims relating to sentencing and/or double jeopardy; and one claim relating to failure to return trial counsel's file to him to review prior to the habeas hearing.[1]

**Discussion and Conclusions of Law**

The West Virginia Supreme Court of Appeals has stated that "[o]ur post-conviction habeas corpus statute . . . clearly contemplates that a person who has been convicted of a crime is

---

[1] Petitioner was represented in the habeas corpus hearing ("habeas hearing") by Matthew A. Victor, Esq. After the order denying Petitioner's writ of habeas corpus was received, Mr. Victor filed a "Notice of Intent to Appeal," with the West Virginia Supreme Court of Appeals. However, Petitioner filed a complaint against Mr. Victor with the Office of Disciplinary Counsel, which necessitated Mr. Victor withdrawing as counsel. Thereafter, Edward L. Bullman, Esq., was appointed to perfect the habeas corpus appeal. For clarity, Mr. Victor is referred to herein as "habeas counsel," and Mr. Bullman is referred to as "habeas appellate counsel."

4

ordinarily entitled, as a matter of right, to only one post-conviction habeas corpus proceeding." Syl. Pt. 1, *Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984). The initial habeas corpus hearing is *res judicata* as to all matters raised and to all matters known or which with reasonable diligence could have been known. *Id.* at Syl. Pt. 4. Therefore, only ineffective assistance of habeas counsel, newly discovered evidence, or a change in law favorable to the applicant and which may be applied retroactively can be considered in any subsequent habeas petition. *Id.*

The Court has also stated:

> a defendant who has not proffered a particular claim or defense in the trial court may not unveil it on appeal. Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal.

*State v. Miller*, 197 W.Va. 588, 597, 476 S.E.2d 535, 544 (1996).

Ultimately, Petitioner's ineffective assistance of counsel claims can be condensed into four areas: (1) habeas counsel was ineffective with regard to questioning trial counsel about decisions made at trial; (2) habeas counsel and habeas appellate counsel were ineffective in failing to raise issues regarding sentencing and double jeopardy; (3) habeas counsel and habeas appellate counsel were ineffective by failing to address all *Losh* list items; and (4) habeas appellate counsel was ineffective by failing to review the appellate brief with Petitioner prior to filing the same.

It is long settled that ineffective assistance of counsel claims are evaluated under the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995); *State ex rel. Quinones v. Rubenstein*, 218 W. Va. 388, 624 S.E.2d 825 (2005); *State ex rel. Wensell v. Trent*, 218 W. Va. 529, 625 S.E.2d 291 (2005). A court must first determine if counsel's performance was deficient under an objective standard of reasonableness. *Id.* Then, a court must also determine if there is a reasonable probability that,

5

but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.*

The Court further elaborated in Syl. Pt. 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Further, with regard to matters of strategy both at trial and in habeas corpus proceedings, the Court has held that:

> "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

Syl. Pt. 3, *State v. Frye*, 221 W.Va. 154, 650 S.E.2d 574 (2006).

Moreover, Syl. Pt. 3 of *State ex rel. Daniel v. Legursky*, 182 W.Va. 643, 391 S.E.2d 90 (1990), states:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

6

At the outset of the first habeas corpus hearing on July 9, 2010, habeas counsel advised the court that he, with the consent and consultation of Petitioner, would be presenting live testimony only with regard to the ineffective assistance of counsel claims against trial counsel, and that he and Respondent agreed that the other items indicated on the *Losh* list were fully briefed, and prepared for the court's ruling without the need for further evidence. Essentially, it was a matter of strategy to highlight the issues habeas counsel felt were the most strong. The following exchange took place:

> MR. VICTOR: We have – "we," that is myself and the respondent – have agreed to maybe simplify some things here by virtue of telling the Court that we have extensively briefed all the issues that Mr. Slater has selected by signing the Losch [sic] list and by agreeing to brief.
>
> The briefs are extensive. And unless the Court has specific questions about everything else other than the issue of ineffective assistance of counsel, I would consider the record closed and submit it for the Court's consideration. Those are legal issues which I do not believe any testimony would be helpful in the court's decisional process.
>
> I don't know if the State agrees with me on that, but I cannot state the State's position.
>
> MS. DRUMMOND: I do agree, your Honor. I have responded to Mr. Victor's petition. I have attached the cases that have been cited, I believe, by Mr. Victor as well as myself. And so, I think that he is correct, that those are legal issues that no evidence is going to be necessary to make a determination.
>
> THE COURT: All right.

7

MR. VICTOR: And if, if I can be of any further assistance in terms of submitting any additional cases or any, you know, any material that the Court would deem appropriate, you know, I'm of course willing to do that.

(Habeas Corpus Transcript pages 4 – 5.)

Habeas counsel went on to state that part of his strategy in the habeas proceeding would be to raise allegations, and leave it to the Respondent (the State) to counter the assertions. In fact, that intention was expressly stated as such:

MR. VICTOR: My – that's, that's part perhaps of – it's not a big secret – of our strategy here to, I guess, allege certain things and leave it to the respondent to indeed respond to that. So, I was not planning on calling Mr. Hicks ...

(Habeas Corpus Transcript p. 13)

Later in the hearing, after habeas counsel inquired of Petitioner regarding his ineffective assistance of counsel claims regarding trial counsel, Petitioner was asked:

Q. (By Mr. Victor) Is there anything else that you would like to add on the issue of Mr. Hick's representation of you?

A. Yes.

(Habeas Corpus Transcript p. 53)

Petitioner went on to enumerate various issues he had with trial counsel's representation and performance at trial.

The habeas corpus hearing was adjourned to allow trial counsel time to review his file (it had been delivered to appellate counsel to perfect the direct appeal, who thereafter passed the file to habeas counsel) prior to his testimony. Additionally, this court directed that part one of the habeas hearing be transcribed in advance of, and to allow counsel to prepare for, trial counsel's

8

testimony. While it does not appear that trial counsel was ultimately provided the file for review, he nonetheless testified at length regarding trial strategy, his decision not to call witnesses Petitioner wanted to testify, and his handling of the alleged victim both pretrial and at trial.

Thereafter, this court required the parties to submit a supplemental brief on the matter of trial counsel's questioning of the alleged victim as it related to the ineffective assistance of counsel claim. Consequently, Petitioner and habeas counsel had every opportunity to raise and pursue all claims related to ineffective assistance of trial counsel.

It is settled that the matter of strategy, tactics, and arguable courses of action are deemed effective unless no reasonably qualified defense attorney would have acted the same in the defense of the accused. Syl. Pt. 3, *State v. Frye*, 221 W.Va. 154, 650 S.E.2d 574 (2006). Furthermore, majority of the claims raised in Petition for Writ of Habeas Corpus 16-P-150 were either known or should have been known with reasonable diligence and raised at the habeas corpus hearing. As a result, those matters will not be given further consideration and are *res judicata* pursuant to *Gibson v. Dale*, 173 W.Va. 681, 319 S.E.2d 806 (1984).

Notwithstanding the finding of *res* judicata, this Court FINDS that the manner in which habeas counsel addressed the ineffective assistance claims was a matter of strategy. Likewise, upon appeal, habeas appellate counsel as, a matter of strategy, chose to advance strongest claims of relief before the Court. Additionally, contrary to Petitioner's assertions, *all* of the *Losh* list items were given consideration upon appellate review. The Memorandum Opinion states, "[T]he circuit court's order reflects its thorough analysis of the grounds raised in the petition for habeas corpus." *Slater v. Ballard*, Memorandum Decision No. 12-0330, September 27, 2013.

Both habeas counsel and habeas appellate counsel made strategic decisions in an effort to highlight and promote Petitioner's strongest claims. In pursuit of their strategy, neither habeas

9

counsel nor habeas appellate counsel's performance was deficient under an objective standard of reasonableness. Accordingly, the court FINDS both habeas counsel and habeas appellate counsel were effective in their representation of Petitioner.

Petitioner raises other claims against habeas appellate counsel which this court FINDS are not cognizable claims of relief, are meritless, and hereby dismisses without further discussion. Those claims are: that habeas counsel failed to return the file to trial counsel to review prior to his testimony at the habeas corpus hearing; that habeas appellate counsel failed to review the habeas corpus appeal with Petitioner prior to filing; and that habeas appellate counsel failed to provide Petitioner with a copy of the habeas transcripts.

The West Virginia Supreme Court of Appeals has recognized that an omnibus hearing and appointment of counsel are not required in all habeas corpus proceedings. "A court having jurisdiction over habeas corpus proceedings may deny a petition for writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Colner*, 156 W. Va. 476, 194 S.E.2d 657 (1973).

Accordingly, this Court has before it, and has reviewed, the transcript from Petitioner's trial, all filings, the transcript of the omnibus hearing from Petitioner's habeas proceeding, as well as the West Virginia Supreme Court of Appeals' Memorandum Order. The Court is satisfied that this complete record shows that Petitioner is not entitled to the relief requested in his second and third petitions for habeas corpus relief, and there is no need to appoint counsel or conduct further proceedings on the same.

10

## RULING

Based upon the foregoing, the Court **DENIES** Petitioner Joshua Lee Slater's second Petition for Writ of Habeas Corpus, 14-P-130, filed March 11, 2014, and third Petition for Writ of Habeas Corpus, 16-P-150, filed Petitioner March 31, 2016, and **ORDERS** the Petitions **DISMISSED** with prejudice, and stricken from the Court's docket.

The objections and exceptions of Petitioner to the Court's ruling are noted and preserved for purposes of any appeal to the provisions contained herein.

The Circuit Court Clerk is **DIRECTED** to mail a certified copy of this Order to the counsel of record and/or parties as follows:

Joshua Lee Slater  
Huttonsville Correctional Center  
P.O. Box 1  
Huttonsville, WV 26273  

Edward L. Bullman, Esq.  
Bullman and Bullman  
607 Ohio Avenue  
Charleston, WV 25302  

Rory Perry, Clerk  
W. Va. Supreme Court of Appeals  
State Capitol Room E-317  
Charleston, WV 25305  

ENTERED this 17 day of April, 2017.

Judge Carrie Webster

---

[i] The allegations raised in Petition for Writ of Habeas Corpus 16-P-150 are:
   A. Habeas Counsel Failed to Raise the Ground that Trial Counsel Failed to Present Exculpatory Evidence at Trial That Would Have, If Presented, Caused a Different Result at Trial In Violation of the Sixth Amendment to the United States Constitution and the West Virginia Constitution.
   B. Habeas Counsel Failed to Raise the Ground at the Omnibus Habeas Hearing that the Petitioner's Trial Counsel Failed (in violation of the United States and West Virginia Constitutions) to Pursue Evidence that Police Had Tampered With Evidence During Their Investigation of the Alleged Incident.
   C. Habeas Counsel Failed to Raise the Ground at the Omnibus Habeas Hearing that the Trial Court had

11

Imposed an Illegal Sentence (in violation of the United States and West Virginia Constitutions) upon the Petitioner for the Crime of Burglary.

D. Habeas Counsel Failed to Raise the Ground at the Omnibus Habeas Hearing that Trial Counsel had failed (in violation of the United States and West Virginia Constitutions) to elicit at trial testimony that would have proved that Judge Carol Foudy threatened to have her placed in custody and take her and the Petitioner's children from them if she tried to drop the charges against the Petitioner before the state could pick them up. This scared the alleged victim and prevented her from telling the truth because had she done so she would have been charged with perjury.

E. Habeas Counsel Failed to Raise the Ground at the Omnibus Habeas Hearing that the Petitioner's transcripts are missing certain statements. Some of the statements are minor such as the Petitioner's attorney asking the police if forensic testing was did [sic] on any of the clothing evidence (cammo) that the alleged victim was wearing that day or if she was struck with a hammer and the answer was no. However, some statements constituted judicial and prosecutorial misconduct and should be in the transcripts, yet when the Petitioner has requested the trial audio tapes to fix the problem the courts claim they do not have them. The Petitioner has proof that the courts handed the tapes over to the state immediately after sentence for duplication and the Petitioner is being denied access to his own tapes for evidence.

F. Habeas Counsel Failed to Raise the Ground at the Omnibus Habeas Hearing that the Petitioner's double jeopardy rights (under both the United States and West Virginia Constitutions) were violated as he was convicted of two crimes, domestic violence and kidnapping, that were incidental to one another and had the same elements. The conviction should have been for one or the other crime, not both.

G. Habeas Counsel failed to Raise the Ground at the Omnibus Habeas Hearing that Trial Counsel had failed (in violation of the United States and West Virginia Constitutions) to properly investigate the circumstances of the alleged incidents the Petitioner was charged with.

H. Habeas Counsel failed to raise the ground at the omnibus hearing that his trial counsel, in violation of the United States and West Virginia Constitutions, had lost important evidence that was not presented to the jury at trial and as a result the Petitioner was found guilty of crimes that he did not commit.

I. Habeas Counsel failed to raise the ground at the omnibus hearing that his trial counsel failed, in violation of the United States and West Virginia Constitutions, to adequately prepare for jury selection and then failed to allow the Petitioner to participate in the selection process.

J. Habeas Counsel failed to raise the ground at the omnibus hearing that his rights under the United States and West Virginia Constitutions were violated when the trial court sentenced the Petitioner to life without the jury making factual findings and determinations to warrant the imposition of a life sentence.

K. Prior to the Omnibus Hearing Habeas Counsel was made aware of the fact that the health center that the Petitioner had had his forensic evaluation (at the request of the State) done at was the same location that the Aunt of the alleged victim in the case worked at. The Petitioner also made habeas counsel aware that his trial counsel knew of this and did not investigate the matter or object to the veracity of the report. Despite this knowledge habeas counsel failed to investigate the matter or raise this issue of trial counsel's ineffectiveness before the court.

L. Habeas Counsel failed to provide effective assistance of counsel at the omnibus hearing as he failed to turn over the file of Nathan Hicks to the prosecution so a reliable omnibus hearing could be conducted.